## In re REMMERDE et ux.

(District Court, N. D. Iowa, W. D.   August 18, 1913.)

### No. 1,044.

**BANKRUPTCY (§ 400*)—JURISDICTION OF BANKRUPTCY COURT—EXEMPTIONS.**

A bankruptcy court, having determined the property that is exempt generally to the bankrupt and set it apart to him, has exhausted its jurisdiction over such property; and creditors claiming that for any particular reason, as waiver, it is not exempt from their claims, must resort to a state court for enforcement of payment therefrom.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 670–675; Dec. Dig. § 400.*]

Submitted on petitions of John W. Remmerde, bankrupt, and his wife, for review of an order of the Referee setting apart to the bankrupt a homestead, but subjecting the same to the payment of certain of his debts.  Order directing sale vacated.

See, also, 206 Fed. 826.

Shull, Sammis & Stilwell, of Sioux City, Iowa, for bankrupt and his wife.

C. A. Babcock, of Sheldon, Iowa, for trustee.

REED, District Judge.  John W. Remmerde was adjudged a voluntary bankrupt by this court October 7, 1912.  A trustee of his estate was duly appointed, who on December 21, 1912, reported that the bankrupt was not entitled to any homestead exemption out of his estate.  The bankrupt on April 23, 1913, filed an application with the referee claiming a homestead in lots 19, 20, and 21, block 88, Ninth addition to the city of Sheldon, and asked that it be set apart as his homestead.  Upon this application the referee held that the bankrupt had a homestead right in said premises and ordered that it be set apart to him by the trustee as such, but that it was subject to the payment of his debts, and ordered that the trustee sell the same and retain the proceeds thereof as assets of the bankrupt estate.  The bankrupt and his wife petition for a review of this order so far as it subjects the homestead so set apart to the payment of the bankrupt's debts, upon the ground, among others, that as to such part of the order the referee was without jurisdiction or authority to make the same.  As the petition of the wife for review of the order of the referee is the same, and is based upon the same ground, as the bankrupt's, the latter petition alone will be considered.

The facts, as stated in the bankrupt's petition asking that a homestead be set apart to him and to which the referee makes reference in his certificate, are substantially as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The bankrupt is a married man, the head of a family, and resides with his family in the city of Sheldon, this state, and is entitled to a homestead exemption under the statute of Iowa. At the time of filing his petition in bankruptcy, and for some time prior thereto, the bankrupt resided with his family on lots 1, 2, 14, and 15 in block 87, in the plat of the Ninth addition to the town or city of Sheldon, and such premises with the dwelling house and appurtenant buildings thereon were owned by him and constituted his residence up to August 10, 1912, at which time he intended to change his homestead to lots 19, 20, and 21 in block 88 of said plat. He owned lots 1 to 15 inclusive of said block 87, which includes the homestead above mentioned; and lots 13 to 21 inclusive in block 88, which includes the lots to which he intended to change his homestead, and lots 13 and 14 in block 84, and perhaps other lots in said plat of the Ninth addition to Sheldon.

August 1, 1911, the bankrupt made a mortgage of $4,000 to one J. F. Stonecipher upon the premises above described, and on June 10, 1912, a second or subsequent mortgage upon the same premises to John McCandlass for $1,200. Whether or not the bankrupt's wife joined in these mortgages does not appear.

August 10, 1912, the bankrupt made a contract in writing, in which his wife joined, with one W. Oostenburg, to sell to him lots 1 to 15 inclusive in block 87 (which included his then homestead) and lots 13 and 14, block 84, for the agreed price of $7,350, upon which Oostenburg then paid $1,000, and agreed to pay $1,000 by September 1, 1912, $1,350 by January 1, 1913, and assume and pay the Stonecipher mortgage for $4,000, before mentioned. The bankrupt was to give possession of the property to Oostenburg November 1, 1912, and make a deed of the property to him upon Oostenburg making the subsequent payments and otherwise complying with his part of the contract. September 1, 1912, Oostenburg paid to the bankrupt the $1,000 due that day under the contract.

At the time of making this contract with Oostenburg the bankrupt had in course of erection a dwelling house, which was inclosed and the roof shingled, and a barn, or other appurtenant buildings, upon lots 19, 20, and 21 in block 88 of said plat of Sheldon (which block is adjacent to block 87 on the south, but is separated therefrom by a street), upon which he intended to move as soon as the house was completed and ready for occupancy, and thereafter make said lots and the dwelling and appurtenant buildings thereon his homestead.

Upon receipt of the $2,000, so paid to him by Oostenburg, the bankrupt paid the same to an attorney of Sheldon, Iowa, to be applied pro rata by said attorney upon claims then held by him and other attorneys against the bankrupt, and the same was so applied.

About October 3, 1912, said attorney advised the bankrupt to file a voluntary petition in bankruptcy, which the bankrupt did on October 5th. Said attorney prepared such petition, in which lots 1, 2, 14, and 15 in block 87 were claimed as the homestead of the bankrupt. That the claim in said petition of lots 1, 2, 14, and 15 in block 87 as the homestead of the bankrupt was made upon the advice of said attorney,

and inadvertently upon the part of the bankrupt, as it was not then and is not now his intention to claim said premises as his homestead; but his intention then was, and still is, to change his homestead to lots 20, 21, and the westerly portion of lot 19 adjacent thereto, and occupy the same as his homestead.

On April 19, 1913, the bankrupt made a quitclaim deed to Oostenburg of the premises described in the contract of August 10, 1912, and pursuant to said contract. That said Oostenburg is ready and willing to perform his part of said contract, and pay the $1,350 due January 1, 1913, with the interest thereon, and assume payment of the Stonecipher mortgage of $4,000, as agreed in said contract. That said $1,350 will satisfy the McCandlass mortgage and relieve the premises from the lien thereof. That the trustee has not sold or otherwise disposed of said lots 19, 20, and 21 in block 88, and that the status of said lots remain as they did when the petition in bankruptcy was filed. That lots 20, 21, and the westerly fractional part of lot 19 adjacent thereto, in block 88, are not as great in value as lots 1, 2, 14, and 15 in block 87.

The foregoing facts are condensed from the petition or application of the bankrupt filed with the referee asking that his homestead under the statutes of Iowa, not to exceed one-half acre in extent, be set apart to him so as to include lots 20, 21, and the westerly part of lot 19 adjacent thereto in block 88 of the Ninth addition to Sheldon.

Other allegations of an evidentiary character are alleged, but they are not deemed important to a determination of the question presented by the petition for review. The facts so alleged are admitted by the trustee in his answer to said petition, with an averment that the bankrupt did not move his family to the new homestead as claimed until May 1, 1913; and this fact is admitted by the bankrupt.

Upon such facts the referee found and certifies as follows:

"I find that none of the facts are in dispute and that they are as stated in the petitions of bankrupt and his wife for homestead rights and exemptions and the answer of trustee admitting said facts, and stating further that bankrupt and his family did not move upon and occupy the premises called in said pleadings the 'New Place' until about May 1, 1913, and I find the only facts material to the decision of the question herein to be as follows:

"First. That prior to August 10, 1912, bankrupt had homestead rights in and to lots 1 and 2 and 14 and 15 in block 87 in the Ninth addition to Sheldon, Iowa; he at said time owning said block.

"Second. That on the said 10th day of August, 1912, bankrupt and his wife contracted in writing to sell and convey all of said block 87 to one Oostenburg, subject to certain incumbrances thereon, when said Oostenburg paid bankrupt $2,000, being the value of the equity of bankrupt in said block 87, and also lots 13 and 14, block 84, in said addition also included in said contract.

"Third. That by the 1st day of September, 1912, said $2,000 had been paid to said bankrupt, and said sum was used as stated in the petitions, and bankrupt and wife afterwards deeded said property to said Oostenburg, pursuant to said contract.

"Fourth. That when bankrupt filed his petition in bankruptcy herein, October 3, 1912, and when he was adjudicated a bankrupt herein, October 7, 1912, he also owned all of the north half of block 88 in said addition, and had owned the same since and prior to said August 10, 1912; and when he filed his said petition and schedules and at the time of said adjudication, he and his wife intended to claim and move upon lots 20 and 21 and 19 in

said block 88, as their homestead, said bankrupt having at said time a house and barn partly constructed thereon.

"Fifth. That pursuant to the said intentions of bankrupt and his wife, they and their family moved into said house and upon said lots 20 and 21 and 19, as their home and homestead, May 1, 1913, and still so reside thereon, having previously resided on said lots 1 and 2 and 14 and 15 in said block 87, for the reasons stated in their said petitions..

"Sixth. That the debts owing by the bankrupt at the time he filed his petition in bankruptcy and his adjudication as a bankrupt herein were greatly in excess of the value of all his property, and the claims that have been filed and allowed against his estate are greatly in excess of the value of all the property of said estate.

### "Question of Law.

"It being admitted that bankrupt is entitled to one-half acre as a homestead in said lots 20 and 21 and 19, in said block 88, but he contending that he is entitled to the same, free of all his debts at the time he was adjudicated a bankrupt herein, and the trustee contending that said homestead is subject to said debts, the question of law raised is whether said half acre is or is not subject to said debts.

"I find as a matter of law that said half acre is subject to said debts. (At time homestead is acquired it is subject to the debts at that time, against the one acquiring the homestead. The homestead is also subject to the liens thereon. Code, §§ 2975, 2976).

"It is therefore hereby ordered that trustee plat said half acre as bankrupt's homestead, subject, however, to all the debts and claims filed and allowed against said estate, and subject to all liens on said half acre, and proceed to sell the same, subject to said liens, separately from the rest of said block 88, and retain the proceeds thereof as assets of said estate.

"Witness my hand this 20th day of May, A. D. 1913.

"Spencer A. Phelps, Referee in Bankruptcy."

The finding of the referee is that the bankrupt at the time he filed his petition in bankruptcy was entitled to a homestead, not exceeding one-half acre in extent (the limit of a homestead under the Iowa statute if it is within a city or town), in lots 19, 20, and 21 in block 88, Ninth addition to Sheldon, as claimed by him, and directed the trustee to set apart to him such homestead in said lots; but also directed the trustee to sell the same and hold the proceeds as assets of the bankrupt estate, thus subjecting the homestead to the payment of the bankrupt's debts. The trustee does not challenge the order of the referee setting apart the homestead in lots 19, 20, and 21, in block 88. That part of the order is not therefore under review and need not be considered.

It may be said, however, that under the Iowa statute and the decisions of its courts the owner of a homestead in that state may change the same and acquire a new one, equal in value to the old, if he does so in good faith, and the latter will be exempt to him to the same extent that the old one was. Code 1897, § 2981; In re Johnson (D. C.) 118 Fed. 312, and the Iowa cases therein cited; Mann v. Corrington, 93 Iowa, 108, 61 N. W. 409, 57 Am. St. Rep. 256; In re Irvin, 120 Fed. 733, 57 C. C. A. 147.

Was the referee authorized to direct the sale of the homestead thus set apart to the bankrupt and hold the proceeds as a part of the bankrupt estate?

This question is not an open one for this court.

In Lockwood v. Exchange National Bank, 190 U. S. 294, 23 Sup.

Ct. 751, 47 L. Ed. 1061, the Supreme Court held that it was clearly the intention of Congress under the present bankruptcy act, as it was under the act of 1867, that the title to the property of a bankrupt, generally exempt to him by the laws of the state, should remain in him and not pass to the trustee in bankruptcy, even though the bankrupt had in writing waived the exemption in favor of certain of his creditors; and the fact that the act confers upon the court of bankruptcy authority to determine the exemptions and exclude them from the assets of the bankrupt estate affords no ground for holding that the court of bankruptcy may reduce such exempt property to money and distribute the proceeds to those in whose favor the bankrupt may have waived his right of exemption, or who might for other reasons subject the same to the payment of debts. The effect of the holding is that when the court of bankruptcy has determined the property that is exempt generally to the bankrupt, and set it apart to him, it has exhausted its jurisdiction over such property; and if creditors claim a right to the property under a waiver by the bankrupt, or that, as to them, it is not exempt for other reasons from their debts, the holders of such debts must resort to a state court of competent jurisdiction to enforce payment of their debts from such property; and, if necessary, the discharge may be withheld to enable them to do so. See, also, Ingram v. Wilson, 125 Fed. 913, 60 C. C. A. 618, and Chicago, B. & Q. R. Co. v. Hall, 229 U. S. 511, 33 Sup. Ct. 885, 57 L. Ed. ——.

The order of the referee directing the trustee to sell the property set apart to the bankrupt as his homestead and hold the proceeds as assets of the bankrupt estate is therefore unauthorized, and so much of his order under review is vacated, and it will be so certified to the referee. The costs of this proceeding will be taxed against the estate.

It is ordered accordingly.