## In re FRENCH.

(District Court, N. D. New York. March 23, 1916.)

1. EXEMPTIONS ☞45—PROPERTY EXEMPT—"NECESSARY WORKING TOOLS."

Milk cans, plows, harrows, cultivators, buzz saws, ice racks, hayracks, harness and team blankets are "necessary working tools" for a farmer within Code Civ. Proc. N. Y. § 1391, exempting necessary household furniture, working tools, and team not exceeding in value $250 when owned by a householder or person having a family for which he provides.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. §§ 56–61; Dec. Dig. ☞45.]

2. EXEMPTIONS ☞17—PERSONS ENTITLED—"HOUSEHOLD"—"HOUSEHOLDER."

Where a farmer rented a farm and occupied the farmhouse thereon, living in it and occupying it with his hired help, having sleeping rooms where they slept, a kitchen where the cooking was done and a common table where they all ate together, this constituted a "household," and he was a "householder" within Code Civ. Proc. N. Y. §§ 1390, 1391, exempting certain property when owned by a householder, though he was unmarried and had no children, and though a hired housekeeper, owning most of the household goods used in the house, kept house for him.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 20; Dec. Dig. ☞17.

For other definitions, see Words and Phrases, First and Second Series, Household; Householder.]

3. EXEMPTIONS ☞116—PROPERTY EXEMPT—NECESSITY OF SELECTION.

Code Civ. Proc. N. Y. § 1390, provides that certain property, when owned by a householder, including stoves put up or kept for use in a dwelling house, shall be exempt. Section 1391 provides that, in addition to the exemptions allowed by the preceding section, necessary household furniture, working tools, and team, not exceeding in value $250, are exempt when owned by a householder or person having a family for which he provides. Held, that stoves are absolutely exempt, regardless of their value, but the exemption created by section 1391 is a qualified one; and, where the debtor has property of the character specified of a greater value than $250, the exemption of any particular property is dependent upon his election to retain such property.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 137; Dec. Dig. ☞116.]

4. BANKRUPTCY ☞398(3)—EXEMPTIONS—WAIVER.

Under Code Civ. Proc. N. Y. § 1391, where a bankrupt's working tools and team exceeded $250 in value, it was immaterial, in passing upon a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

chattel mortgagee's right to assert the exemption, where the bankrupt had not done so, that the team was covered by a prior mortgage, executed more than four months before bankruptcy, as the debtor waived his right of exemption as against the mortgagee as to all property mentioned and described in both mortgages.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 676; Dec. Dig. ☞398(3).]

5. BANKRUPTCY ☞399(1)—EXEMPTIONS—WAIVER OF EXEMPTIONS.

The right to claim the exemption of specific property exempted by law belongs to the bankrupt, and he may surrender or waive it in favor of general creditors, execution creditors, and the trustee in bankruptcy, but he should not be permitted to do so as against a mortgagee in good faith and for value who, under his mortgage, has succeeded to the bankrupt's title and interest.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 669; Dec. Dig. ☞399(1).]

6. BANKRUPTCY ☞400(1)—EXEMPTIONS—TITLE TO EXEMPT PROPERTY.

Bankruptcy Act (Act Cong. July 1, 1898, c. 541, 30 Stat. 544 [Comp. St. 1913, § 9590]) § 6a, provides that such act shall not affect the allowance of exemptions prescribed by state laws. Section 47a, cl. 11 (section 9631), requires trustees to set apart the bankrupt's exemptions and report the items and value thereof. Section 70a (section 9654) vests the bankrupt's title in the trustee, except as to property which is exempt. Section 7, cl. 8 (section 9591), requires the bankrupt to schedule all of his property and make a claim for his exemptions. General order 17 (89 Fed. viii, 32 C. C. A. xix) requires the trustee to report the articles set off to the bankrupt as exempt. *Held*, that the title to property unqualifiedly exempt under the state law remained in the bankrupt, and never passed to or vested in the trustee, and no assertion or claim of exemption was necessary, and it was the duty of the trustee to set such property apart, or at least let it alone.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671, 673; Dec. Dig. ☞400(1).]

7. BANKRUPTCY ☞398(3)—EXEMPTIONS—RIGHTS OF MORTGAGEES.

A mortgagee of property of a bankrupt, unqualifiedly exempt under state laws, had the right to take and sell the property, though the mortgage was given within four months and constituted a preference; and. where the property was sold by the trustee, the proceeds belonged to the mortgagee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 676; Dec. Dig. ☞398(3).]

8. BANKRUPTCY ☞400(1)—EXEMPTIONS—RIGHTS OF MORTGAGEES.

Where a bankrupt's working tools and team exceeded $250 in value, and selection and election were therefore necessary to bring any particular property within the exemption of Code Civ. Proc. N. Y. § 1391, a mortgagee was not authorized to hold property on the theory that the bankrupt might have designated it as exempt, where the bankrupt made no claim of exemption, as the right to select or designate property is not assignable and cannot be conferred upon a mortgagee unless the property is designated in the mortgage as exempt and mortgaged as such.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 671, 673; Dec. Dig. ☞400(1).]

9. BANKRUPTCY ☞398(3)—EXEMPTIONS—RIGHTS OF MORTGAGEES.

Where a bankrupt did not expressly waive his exemption as to property specifically exempted by statute before a mortgage thereon was given and possession taken by the mortgagee, and the mortgagee, prior to the filing of the petition in bankruptcy, asserted his rights as mortgagee and reduced the property to possession, title passed to him, notwithstanding the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

refusal or failure on the part of the bankrupt to assert the exemption, though the mortgage was preferential as to property not exempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 676; Dec. Dig. ☞398(3).]

10. BANKRUPTCY ☞311(4)—CLAIMS—SURRENDER OF "PREFERENCES."

Bankruptcy Act, § 57g, as amended by Act Cong. Feb. 5, 1903, c. 487, § 12, 32 Stat. 799 (Comp. St. 1913, § 9641), provides that the claims of creditors who have received voidable preferences shall not be allowed unless they surrender the preferences. Section 60a, as amended by Act Cong. Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (section 9644), provides that a person shall be deemed to have given a preference if, being insolvent, he has, within four months made a transfer which will enable a creditor to obtain a greater percentage of his debt than other creditors of the same class. Section 60b, as amended by Act Cong. June 25, c. 412, § 11, 36 Stat. 842 (section 9644), provides that if a bankrupt shall have made a transfer, and if, at the time and being within four months before the filing of the petition, the bankrupt be insolvent and the transfer then operate as a preference, and the person receiving it then have reasonable cause to believe that it will effect a preference, it shall be voidable. Within four months before bankruptcy, a dairy farmer executed to a creditor a chattel mortgage and assignments of amounts coming due him for milk delivered to a milk condensary. The creditor knew that the bankrupt was on a rented farm, that his horses, tools, etc., and household furniture and all of his live stock was already under chattel mortgage to himself and others, or was then being put under the lien of the mortgage then given. By assignments of the amounts coming due for milk, the entire proceeds of the dairy were turned over to him and another secured creditor. The bankrupt had not been paying as agreed, and on several occasions had been "dunned" or urged to pay, but had not made payments except by means of the assignments. *Held,* that the creditor had knowledge of such facts and circumstances as put him on inquiry and charged him with knowledge of the bankrupt's insolvency, and such as would have caused an ordinary person to believe that a preference would be effected, and the mortgage and assignments were therefore voidable "preferences," moneys received under which should be returned before the allowance of the creditor's claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–499; Dec. Dig. ☞311(4).

For other definitions, see Words and Phrases, First and Second Series, Preference.]

11. EXEMPTIONS ☞48(2)—PROPERTY EXEMPT—"EARNINGS" OF DEBTOR.

Where a dairy farmer sold the milk from the dairy to a condensary, amounts coming due him from the proprietor of the condensary were not his "earnings," and as such exempt under Code Civ. Proc. N. Y. § 2463, providing that supplementary proceedings cannot reach the earnings of the judgment debtor for his personal services rendered within 60 days, when it is made to appear by his oath or otherwise that they are necessary for the use of a family, wholly or partly supported by his labor, especially where no such showing was made, and it appeared that no family was supported by the debtor's labor.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 71; Dec. Dig. ☞48(2).

For other definitions, see Words and Phrases, First and Second Series, Earnings.]

12. BANKRUPTCY ☞188(2)—LIENS—RIGHT TO PROCEEDS OF PROPERTY SUBJECT TO LIEN.

Where a bankrupt, within four months before bankruptcy, purchased property, and for a part of the purchase price executed a property note

which became a lien on the property, the holder of the note was entitled to the proceeds of a sale of such property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 292; Dec. Dig. ⊚⟶188(2).]

13. BANKRUPTCY ⊚⟶311(6)—CLAIMS—SURRENDER OF PREFERENCES.

Where a trustee in bankruptcy held the proceeds of exempt property belonging to a mortgagee, who had received a voidable preference and was ordered to return the preferential payment as a condition to the allowance of his claim, the one sum might be offset against the other, and only the balance paid to the trustee, as a bankruptcy court is a court of equity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 497–499; Dec. Dig. ⊚⟶311(6).]

In Bankruptcy. In the matter of Victor J. French, bankrupt. On petition to review an order of the referee. Modified.

This is a proceeding on petition of the trustee in bankruptcy to reconsider and revise the order allowing the claim of Thomas A. Jewell. The trustee in bankruptcy Willard B. Phetteplace asks that the claim be disallowed on the ground that said Jewell has received a preference or preferences. The validity of a chattel mortgage covering certain property is also in question as is the right of said Jewell to receive certain money from Borden's Condensed Milk Factory in the city of Norwich due for milk delivered at said factory by said French.

Frank W. Barnes, of Norwich, N. Y., for trustee.
James P. Hill, of Norwich, N. Y., for claimant Jewell.

RAY, District Judge (after stating the facts as above). The bankrupt, Victor J. French, was and is an unmarried man, but he rented and worked a farm in the town of Norwich, upon which was a dwelling house in which he lived and kept house, having a housekeeper, his aunt, who owned the larger part of the household furniture. However, the bankrupt purchased the supplies and boarded his hired help. He owned two Round Oak stoves and one cookstove, which were used in the house. This was a dairy farm, and the milk from the dairy was taken to Borden's Condensary in the city of Norwich in the name of French. On the farm French had a chestnut horse, a black mare, 13 milk cans, two land plows, a spring tooth harrow, two cultivators, one Stewart clipping machine, one Ireland buzz saw, two ice racks, two hayracks, a heavy single harness, a fur robe and four pairs of team blankets.

On the 27th day of October, 1915, being heavily in debt, which indebtedness he was unable to pay, said Victor J. French filed in this court a voluntary petition in bankruptcy, and he was duly adjudicated on or about that date and Willard B. Phetteplace at the first meeting of creditors was duly appointed and qualified as trustee of his estate in bankruptcy.

On the 1st day of May, 1915, the said Victor J. French was indebted to Thomas A. Jewell, the claimant here, in the sum of $1,115, and on that day he executed and delivered to Jewell a chattel mortgage as collateral security for the payment of two notes given to and held by Jewell, the aggregate of which were said $1,115. This mortgage

was a lien upon five horses and a colt, four sets of harness, wagons, cutters, and a manure spreader. I find no satisfactory or sufficient evidence to show that this mortgage, given more than four months prior to the filing of the petition in bankruptcy, constituted a preference, or that it was given and received in fraud of creditors.

On or about the 7th day of July, 1915, the said Victor J. French became indebted to said Jewell in the further sum of $25, part of the purchase price of a hay tedder, and on that day he signed and delivered to Jewell a property note for said sum of $25, which became a lien on the tedder. September 23, 1915, the said Victor J. French gave another chattel mortgage to Jewell to secure the sum of $538.77, which indebtedness was represented by a note of said Jewell, then in the Chenango National Bank of Norwich, N. Y. In fact this last-mentioned mortgage was also additional collateral security for the payment of the notes secured by the chattel mortgage of May 1, 1915. This second chattel mortgage covered the above-mentioned chestnut horse, black mare, two Round Oak stoves, cookstove, milk cans, land plows, spring tooth harrow, cultivators, clipping machine, buzz saw, ice racks, hayracks, single harness, robe and team blankets. The first mortgage covers the same two horses mentioned and described in the second mortgage. At the time this second chattel mortgage was given said French, by oral agreement, merely assigned a half interest in the milk checks thereafter to be received by him from Borden's Condensary to Jewell as further security for the payment of his indebtedness to Jewell then existing.

Later a judgment was obtained against French by other parties, and a levy was made by virtue thereof upon the personal property of French. French had given other chattel mortgages to other parties, and a sale of all the personal property of the bankrupt was advertised to take place on the 28th day of October, 1915. The voluntary petition in bankruptcy anticipated this sale, and this court granted an injunction, enjoining the parties interested from making such sale, but before same was served or brought to the knowledge of the holders of the mortgages, a part of the property had been sold. Of the property covered by the chattel mortgages held by Jewell there was sold the two plows, the two cultivators, one ice rack, the buzz saw, and the spring tooth harrow. The sum bid for these articles was $45.25, and the purchasers had paid thereon the sum of $30 and this $30 was paid over to Thomas A. Jewell, the claimant, and is held by him. The claim filed by Jewell does not credit this sum of $30, and in fact it is held awaiting the determination of this court as to the rights of the respective parties thereto. Said Borden's Condensary, out of one-half of the milk checks going to French, paid Jewell the sum of $13.28 on account of the September, 1915, milk delivery.

November 13, 1915, by stipulation of all the parties concerned, and pursuant to an order of this court, the personal property of French remaining unsold was sold at public auction, and the articles covered by the first chattel mortgage mentioned, given to Jewell, were sold for the sum of $748.50. The hay tedder, subject to the lien of the prop-

erty note, was sold for $9, and the proceeds, amounting to $757.50, were paid over to Thomas A. Jewell.

The claim of Jewell filed and heretofore allowed, and which is sought to be revised and disallowed unless Jewell shall surrender the alleged preference, is for the sum of $968.40. In getting at this sum credit is given for the $13.28 received of Borden's Condensary for the September milk, but not for the $30 received and paid over to Jewell on account of the articles sold at the auction on the 28th day of October, 1915. The said $757.50 is credited in the claim, leaving same at the sum of $210.90, and Jewell alleges that it is secured by the said chattel mortgage of September 23, 1915, and Jewell claims that he is entitled to have, receive, and retain the $95.50 received on the last mortgage sale for the articles mentioned in the second chattel mortgage given September 23, 1915, but which sum does not include the amount received for the horses therein mentioned. This $95.50 is now in the hands of the trustee in bankruptcy. This claim of $210.90 the trustee asks to have disallowed unless Jewell shall return the $30 hereinbefore mentioned, and also return or pay to the trustee in bankruptcy the $13.28 received by him from Borden's Condensary on account of the September milk. The claimant Jewell insists that an order should be made, awarding to him, not only the said $45.25, which sum includes the $30 mentioned, but the $95.50 now in the hands of the trustee, and which came from articles described in the second chattel mortgage and also the $13.28, and that his claim should be reduced by said sums of $95.50 and $45.25, in all $140.75, and that it should be allowed for the balance or in the sum of $70.15, and that he should share with unsecured creditors in the distribution of the assets of the bankrupt to that extent.

As to the stoves mentioned, and which were covered by the second chattel mortgage, the claimant Jewell asserts that French was a householder, and entitled to the exemption allowed householders by the laws of the state of New York. He insists that as the stoves were exempt property, that is exempt from levy and sale on execution against French, French had the right to mortgage them to the claimant Jewell, and that Jewell has the right to avail himself of the fact that they were exempt from levy and sale on execution as to all creditors. The trustee in bankruptcy insists that Jewell, as mortgagee, cannot assert any right in or title to such property or its proceeds under the chattel mortgage by virtue of its exempt character, inasmuch as no one but the householder himself can assert or avail himself of the exemption right or privilege given by statute. As to the plows, harrow, cultivators, buzz saw, rack, etc., mentioned, and which were covered by the second chattel mortgage, the same claims, in substance, are made by the respective parties, that is, it is asserted on the one hand that French was a householder and a farmer and that such articles were exempt from levy and sale, and that he had a right to mortgage them to Jewell, and that Jewell, as against the trustee in bankruptcy and other creditors, may assert such exemption in his own favor, while the trustee in bankruptcy asserts that French only can assert such right of exemption. The contention is—and this seems to be the fact

—that the bankrupt, French, has not asserted any claim of exemption as to any of the articles mentioned, either in his schedules or otherwise. By section 1390 of the Code of Civil Procedure of the State of New York (2 Bliss N. Y. Annotated Code, § 1390), it is provided:

"The following personal property, when owned by a householder, is exempt from levy and sale by virtue of an execution; and each movable article thereof continues to be so exempt, while the family, or any of them, are removing from one residence to another: 1. All * * * stoves, put up, or kept for use, in a dwelling house."

Beds and bedding necessary for the judgment debtor and the family are also exempt, but the robe and blankets mentioned do not seem to come within this description. By section 1391 of the said Code of Civil Procedure it is provided:

"In addition to the exemptions, allowed by the last section, necessary household furniture, working tools and team, * * * not exceeding in value $250.00, * * * are exempt from levy and sale by virtue of an execution, when owned by a person, being a householder, or having a family for which he provides, except," etc.

[1, 2] It seems to be clear that milk cans, plows, harrows, cultivators, buzz saws, ice racks, hayracks, harness for team and team blankets are necessary working tools for a farmer. There can be no question that the cans, plows, harrow, cultivators, buzz saw, racks, harness, robe and team blankets were exempt from levy and sale by virtue of an execution against French, provided he was a householder within the meaning of the law, and of course this is true as to the stoves. It is contended that French was not a householder, inasmuch as he was unmarried and had no children, but simply lived in the farmhouse, having a hired woman to keep house for him, and who owned most of the household goods used. I am not impressed with this contention, inasmuch as the statute quoted speaks of a "householder" and not of a "wife holder." In my judgment a farmer who rents a farm, occupies the house thereon, has it kept and managed by a hired woman, who cooks the meals and keeps and cares for the table, sleeping rooms, etc., for the accommodation of the farmer and his hired help, is a householder within the meaning and intent of the sections of the Code to which attention has been invited. In Vam Vechten v. Hall, 14 How. Prac. (N. Y.) 436, it is held one who rents a house and keeps boarders and servants is a householder, although he has no wife or children for whom he provides. In Chamberlain v. Darrow, 46 Hun (N. Y.) 48, it was said and held:

"The term 'householder,' as used in the statute, has a very well-defined meaning, and imports the master or head of a family who reside together and constitute a household. And the statute is entitled to a liberal construction, with a view to effectuate its purpose, which is the protection of families against being, by the process of execution, divested of the necessaries for support, which the exempted articles may furnish and provide the means to supply."

In Fink v. Fraenkle (N. Y. City Ct.) 14 N. Y. Supp. 140, it was held that:

"A householder is the master of a household; and that a household is a family living together, * * * not necessarily wife and children, but * * * a family, small or large, for which the debtor provides."

French hired the farm, including the house, and kept house. He hired a housekeeper and boarded his hired help. He had the right to rent all his furniture. In Griffin v. Sutherland, 14 Barb. (N. Y.) 456, it was held that "a person having, and providing for, a household is a householder." In Bowne v. Witt, 19 Wend. (N. Y.) 475, it was held that:

> "The word 'householder' means the head, master, or person who has the charge of and provides for a family, and does not apply to the subordinate members or inmates of the household."

It seems to me that the man who rents, holds, and occupies the house, if he has and hires a housekeeper and keeps house and hires help to run his farm and boards such help in the house, is a householder. Bouvier's Law Dictionary defines "household" as "those who dwell under the same roof and constitute a family"; and as to "householder," that word is defined as "master or chief of a family; one who keeps house with his family * * * a keeper of a tavern or boarding house, or a master or mistress of a dwelling house."

French was in the actual and rightful sole possession of a dwelling house, a farmhouse, and he lived in and occupied it with others, having sleeping rooms where they slept, and kitchen where the cooking was done, and a common table where they all ate together. It seems to me that this constituted a household, and made French a householder. If he had been married and had kept house in the same way, his wife living with him but having a hired housekeeper, and his wife had died, would he have ceased to be a householder?

[3, 4] The exemption created by section 1390 of the Code of Civil Procedure is absolute if the owner is a householder (Wilcox v. Howe, 59 Hun, 268, 270 and 271, 12 N. Y. Supp. 783), but the exemption created by section 1391 is a qualified one, inasmuch as the exemption is limited and indefinite, and where a debtor has property of that character of greater value than $250, the exemption of any particular property and what property is dependent upon his election as to the particular property that may be retained by him. In the instant case the stoves were absolutely exempt from levy and sale on execution. Under section 1390 the value of the exempt property is immaterial, except as to the tools and implements of a mechanic. Under section 1391 the exemption applies to quite a large list of property which in the aggregate may be worth two to four times $250. Therefore an election was necessary in order to have the exemption applied. In the instant case it appears that French owned a team and working tools, and on the farm he probably had food for the team. It does not appear that the aggregate value of the working tools and team were less than $250 in value. So far as appears, Jewell took the team and harness, and the value of these may have satisfied the exemption. So far as this case is concerned on the question of exemption, it is immaterial that the team was covered by the first mortgage. Clearly as to Jewell, French waived his right of exemption as to all property mentioned and described in both mortgages.

We now come to the question whether the trustee in bankruptcy could have taken, and can take, the stoves and the farming tools sold

and covered by the mortgage as against French, in the absence of a claim of exemption asserted by French, and, even if so, is Jewell in any respect, or to any extent, so subrogated to the rights and privileges of French by virtue of his mortgage that he, independently of French, can assert the exemption and take the benefit thereof as against the trustee in bankruptcy who represents the general creditors, and which creditors could not have obtained judgment, issued execution and levied upon certain of this property against the objection and election if exercised by French?

In Field v. Ingreham, 15 Misc. Rep. 529, 37 N. Y. Supp. 1135, County Judge Metcalf held that property specifically, by section 1390, exempted from levy and sale by judgment creditors is exempt by operation of law absolutely, but that articles to a certain value, exempted under section 1391 of the Code referred to, must be claimed as exempt.

It would seem just that if a debtor, even in contemplation of bankruptcy, or knowing his insolvency, borrows money or purchases property to use up, and pledges as security his exempt property, property his trustee in bankruptcy cannot take and which it is the duty of the bankruptcy court to set aside, the pledgee or mortgagee ought to be able to himself assert such exemption to protect his security as against the trustee in bankruptcy. Such pledgee or mortgagee for a valuable consideration and in good faith should be held subrogated to the rights of such pledgor or mortgagor in the interest of fair dealing and justice. He ought not to be at the mercy of the mortgagor and his election. If this is permitted the general creditors and trustee are no worse off than they would be if such mortgage had not been given or pledge made, as the bankrupt has parted with his interest in his exempt property only. Such a transaction is not in derogation of the rights of general creditors in any respect or to any extent whatever.

[5-7] As matter of course, the right to claim exemption to specific property exempted by law belongs to the bankrupt householder, and he may surrender or waive it in favor of general creditors, execution creditors and trustee in bankruptcy, but should he be permitted to do so as against a mortgagee in good faith and for value, who, by virtue of his mortgage, has succeeded to his title and interest? True the right to claim exemption cannot alone be mortgaged, but does it not go as an incident of the property itself? If the owner of exempt property may waive such exemption in favor of his general creditors, or execution creditors, or trustee in bankruptcy, why may he not waive it in favor of his mortgagee or pledgee? Section 6 of the Bankruptcy Act (Comp. St. 1913, § 9590) provides:

"*Exemptions of bankrupts.*—a. This act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the state laws in force at the time of the filing of the petition in the state wherein they have had their domicile for the six months or the greater portion thereof immediately preceding the filing of the petition."

Section 47 of the Bankruptcy Act (section 9631) provides:

"Trustees shall respectively * * * (11) set apart the bankrupt's exemptions and report the items and estimated value thereof to the court as soon as practicable after their appointment."

It is seen that it is made the imperative duty of the trustee to set apart the exemptions of a bankrupt. The duty is on the trustee, and not on the bankrupt. General order 17 (89 Fed. viii, 32 C. C. A. xix), adopted and established by the Supreme Court of the United States under the provisions of the Bankrupt Act, provides that:

"The trustee shall make report to the court within twenty days after receiving the notice of his appointment of the articles set off to the bankrupt by him according to the provisions of the forty-seventh section of the act with the estimated value of each article and any creditor may take exceptions to the determination of the trustee within twenty days after the filing of the report."

By section 70a of the act the trustee of the estate of a bankrupt upon his appointment and qualification is vested by operation of law with the title of the bankrupt as of the date he was adjudged a bankrupt, "except in so far as it is to property which is exempt to all." Then follows a statement of the property the title to which vests in the trustee. In Collier on Bankruptcy (10th Ed.) page 191, it is said:

"Whether an exemption is a mere personal privilege which must be claimed by the bankrupt, or is a property interest accruing from the statute itself, will determine the necessity of claiming the exemption. If the exemption is of the former class, it must be asserted with the formality required by the state statute; if it is of the latter class the statute executes itself."

Moran v. King, 7 Am. Bankr. Rep. 176, 111 Fed. 730, 49 C. C. A. 578, is cited as authority. This decision was rendered in regard to the homestead exemption laws of the state of Virginia and Judge Boyd refers to Reed v. Bank, 29 Grat. 719. In Collier on Bankruptcy (10th Ed.) at page 191, it is also said:

"While an exemption is a matter of right, it, being personal to the bankrupt, must be asserted, or he will be deemed to have waived it. What he does not claim for himself and his family he leaves in the general fund for distribution."

In re Brown (D. C.) 4 Am. Bankr. Rep. 46, 100 Fed. 441, In re Bolinger (D. C.) 6 Am. Bankr. Rep. 171, 108 Fed. 374, and In re Sloan (D. C.) 14 Am. Bankr. Rep. 435, 135 Fed. 873, all Pennsylvania cases, are cited.

In Lockwood v. Exchange Bank, 190 U. S. 294, 23 Sup. Ct. 751, 47 L. Ed. 1061, it was held:

"Under the Bankruptcy Act of 1898, the title to property of a bankrupt which is generally exempted by the law of the state in which the bankrupt resides remains in the bankrupt, and does not pass to the trustee, and the bankrupt court has no power to administer such property even if the bankrupt has, under a law of the state, waived his exemption in favor of certain of his creditors. The fact that the act confers upon the bankruptcy court authority to control exempt property in order to set it aside does not mean that the court can administer and distribute it as an asset of the estate. The two provisions of the statute must be construed together, and both be given effect."

In that case, however, the bankrupt set aside and claimed his homestead exemption in his schedules, and the trustee set same aside and designated the property claimed as a homestead exemption. By clause 8 of section 7 of the Bankruptcy Act, the bankrupt is required to schedule all his property, and to make "a claim for such exemptions as he

may be entitled to." In Lockwood v. Exchange Bank, supra, the Supreme Court said:

"We think that the terms of the Bankruptcy Act of 1898, above set out, as clearly evidence the intention of Congress that the title to the property of a bankrupt generally exempted by state laws should remain in the bankrupt and not pass to his representative in bankruptcy, as did the provisions of the act of 1867, considered in Re Bass. The fact that the act of 1898 confers upon the court of bankruptcy authority to control exempt property in order to set it aside, and thus exclude it from the assets of the bankrupt estate to be administered, affords no just ground for holding that the court of bankruptcy must administer and distribute, as included in the assets of the estate, the very property which the act in unambiguous language declares shall not pass from the bankrupt or become part of the bankruptcy assets. The two provisions of the statute must be construed together and both be given effect. Moreover, the want of power in the court of bankruptcy to administer exempt property is besides shown by the context of the act, since throughout its text exempt property is contrasted with property not exempt, the latter alone constituting assets of the bankrupt estate subject to administration. The act of 1898, instead of manifesting the purpose of Congress to adopt a different rule from that which was applied, as we have seen with reference to the act of 1867, on the contrary, exhibits the intention to perpetuate the rule, since the provision of the statute to which we have referred in reason is consonant only with that hypothesis."

I think that under the decisions the title to the three stoves which were unqualifiedly exempt was in and remained in the bankrupt, French, and that such title never passed to or vested in the trustee in bankruptcy. No assertion or claim of exemption was necessary. It was evident on the face of things that these stoves were exempt, and it was the duty of the trustee to set them apart, or at least let them alone. French had the right to mortgage them, and Jewell, under his mortgage, had the right to take and sell them, even if such mortgage was given within the four-month period and constituted a preference. No general creditor of French, and no judgment creditor of French, could have seized, levied upon, or sold these stoves; and, as the title did not pass to the trustee, and as the mortgage, so far as the stoves were concerned, is valid in any event, the proceeds derived from their sale belong to Jewell.

[8] As to the proceeds of the other property, viz., the farming tools and implements, I do not see that Jewell can maintain his claim to the proceeds, provided his mortgage was given under such circumstances as to constitute a preference. This property may and may not have been exempt. That is, French might have asserted his claim to it as exempt and designated it as property which he claimed under his exemption rights, but I think that the Bankruptcy Act contemplates that the bankrupt himself shall designate what property he claims as exempt, and I find no authority which will sanction the idea that the bankrupt may mortgage such property which is not per se exempt, and thereby authorize the mortgagee to thereafter take and hold same on the theory that the bankrupt himself might have and, of right, could have, designated same as exempt. In my judgment, as the law stands, the right to select or designate property as exempt under section 1391 of the Code (N. Y.), and then assert and enforce a claim of exemption to such property, is not assignable, and such right cannot

be conferred upon a mortgagee unless the property is designated in the mortgage as exempt property and mortgaged as such. However, this is not at war with the proposition that property, which under the statute is absolutely exempted in any event and which by virtue of the Bankruptcy Act does not pass to the trustee, may be mortgaged by the bankrupt prior to adjudication and pass under such mortgage to the mortgagee on proof merely that it was in fact absolutely exempt. This applies to the stoves which sold for $29.25, but not to the other property, which required selection and election in order to bring the team and farming tools within the exemption of section 1391 of the New York Code of Civil Procedure. Reference to the list of property mortgaged by French and sold shows that he had much more than $250 worth of team, farming tools, etc., from which he might have selected his exemption. In Vitzthum v. Large (D. C.) 20 Am. Bankr. Rep. 666, 162 Fed. 685, it was held that a trustee may not recover as a preference exempt property, or the proceeds thereof, transferred by the bankrupt within the four-month period, citing In re Eash (D. C.) 19 Am. Bankr. Rep. 738, 157 Fed. 996. In the Eash Case the state court had adjudged the property in question to be exempt.

[9] As the stoves were absolutely exempt property in the hands of French, such exemption not depending on election or selection, in no event could the title thereto pass to the trustee in bankruptcy, unless French should have expressly waived his exemption before the mortgage was given and possession taken by the mortgagee; and, as this was not done, and Jewell, the mortgagee, prior to the filing of the petition in bankruptcy, asserted his rights as mortgagee and reduced the stoves to possession, which he had the right to do, both as against French and his trustee subsequently appointed, title passed to Jewell, and no subsequent act or declaration of French· or refusal or failure on his part to assert the exemption of such stoves could affect Jewell's right thereto, and the trustee in bankruptcy cannot recover or hold or retain the proceeds of such stoves, conceding the mortgage must be avoided as preferential as to other property. The trustee has had no interest in such stoves or the proceeds thereof at any time.

[10] As to the milk checks or dividends, there is no written evidence of any transfer to Jewell, except written orders signed by French and delivered to the Borden's Condensed Milk Company, one of which, that relating to the September milk delivery, reads as follows:

"Norwich, New York, Sep. 28, 1915.

"To Borden's Condensed Milk Co., 108 Hudson Street, New York City: In making payment for milk delivered by me during the month of Sept., 1915, at the factory of Borden's Condensed Milk Co., located at Norwich, New York, please draw check or checks to the order of the following person or persons for the amount set opposite each name respectively, viz.:

"Check to the order of ½ Bert Hawley for $———
  "    "    "    "    ½ T. A. Jewell  "  ———
                                "Victor J. French, Dairyman.

"Witness: G. A. Romer, Factory Supt.

"N. B.—This order applies only to the month above specified, and a separate order must be filed for each month a dairyman desires to assign money due him for milk."

The other two read precisely the same, date and all, except one reads, "during the month of October" and the other, "during the month of November." These orders direct the payment of one-half the proceeds of the milk for each of the months of September, October, and November, to Jewell, the other half to Bert Hawley, another mortgagee, having a mortgage on the dairy itself; that is, on the cows. There was no sale or transfer of these milk dividends, or of the milk for any new or present consideration. The money received on the orders was to be applied on the mortgage debt of September 23, 1915, and the money received was a payment on a prior debt and made within the four months period. It was not a payment made or an assignment or transfer made for the purpose of hindering, delaying or defrauding the creditors of French, or any one of them. Were these orders a preferential payment or security which must be returned as a condition of the allowance of Jewell's claim? French was badly insolvent at the time the orders were given, and at the time the chattel mortgage of September 23, was given and both the mortgage and orders were given to secure the antecedent or pre-existing debt before mentioned. Were the mortgage and orders received by Jewell "under such circumstances as naturally would have caused the ordinary person had he been the creditor receiving the securities, mortgage, and order, and the money thereon, so far as received, to have believed that thereby a preference would be effected"? Aronin v. Security Bank of New York, 228 Fed. 888, 890, —— C. C. A. —— where it is held,

"Voidable Preferences—Transfers Constituting. Where defendant, within four months before the filing of a petition in bankruptcy and while the bankrupt was insolvent, received from the bankrupt to apply on a pre-existing debt accounts due the bankrupt under circumstances such as naturally would have caused an ordinary person to believe that a preference would thereby be effected, the trustee could recover for the benefit of the bankrupt estate." ·

Section 57g of the Bankruptcy Act, as amended 1903 reads as follows:

"The claims of creditors who have received preferences, voidable under section sixty, subdivision 'b,' or to whom conveyances, transfers, assignments, or incumbrances, void or voidable under section sixty-seven, subdivision 'e,' have been made or given, shall not be allowed unless such creditors shall surrender such preferences, conveyances, transfers, assignments, or incumbrances."

Sections 60a and 60b of the said act, so far as applicable here, provide as follows:

(a) "A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. * * *

(b) "If a bankrupt shall * * * have made a transfer of any of his property, and if, at the time of the transfer * * * and being within four months before the filing of the petition in bankruptcy * * * the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such * * * transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

Therefore the question is, did Jewell when he received the chattel mortgage and when he received the orders referred to have knowledge of such facts that he is chargeable with having had reasonable cause to believe that the enforcement of same, that is, the taking possession of the property thereunder, would enable him to receive or obtain a greater percentage of his debt or claim than any other of the creditors of French of the same class? Mr. Jewell's attorney has not attempted to claim that the situation and Jewell's knowledge was not such as to charge him with having had the reasonable cause to believe above mentioned.

Jewell knew that French was on a rented farm; that his horses, harnesses, and farming tools, including robe and blankets, ice rack and hayracks and all the household furniture he owned and all the live stock on the farm either was already under chattel mortgage to himself and others or was then (in September) being put under the lien of a chattel mortgage to himself. By means of the orders on Borden's Condensed Milk Company the entire proceeds of the dairy (and this was a dairy farm) were turned over to Jewell and to Hawley, both holding security for their claims. Hawley's mortgage was on the cows principally. So far as appears, these mortgages and these orders covered all the property of French of every name and nature, except his clothing and his personal ornaments, if any. French was owing for rent of the farm he occupied, and hundreds of dollars to other persons, excluding from consideration his help on the farm. Jewell testifies that French did not pay as obligated and agreed, and that on several occasions he either "jacked him up" or caused him to be "jacked up," that is, "dunned," or urged to pay as agreed. Still payments were not made except as Jewell and Hawley drew from the Borden's Condensed Milk Company the proceeds of the dairy.

The evidence is conclusive that the indebtedness of French, aside from labor claims, was such that the enforcement of the chattel mortgage and orders, or of either, would give to Jewell a much greater percentage of the claim due him than any other creditor of the same class would or could obtain. French knew that he was giving a preference, and if Jewell did not actually know that French was insolvent, he had knowledge of such facts, conditions, and circumstances as put him on inquiry, and charged him with knowledge of that fact, and naturally would have caused even an ordinary person to believe that a preference would be effected by the giving and enforcement of the mortgage and orders of September, 1915. It is impossible to find or hold otherwise. The orders given by French to Jewell on Borden's Condensed Milk Company, to which company the milk from the dairy was daily delivered and sold, and the chattel mortgage of September 28th, all being dated the same day, are voidable preferences, and it is the duty of the trustee to collect of that company the balance due for milk, and Jewell's claim cannot be allowed until he surrender the preference received, $13.28 for milk.

[11] It is claimed by Jewell that the amount due from Borden's for the September milk was exempt property as being earnings of French within 60 days under section 2463 (N. Y.) Code of Civil Proc. In

substance and effect this section provides that proceedings supplementary to execution cannot reach—

"the earnings of the judgment debtor for his personal services, rendered within the sixty days, next before the institution of the special proceeding; when it is made to appear, by his oath or otherwise, that these earnings are necessary for the use of a family, wholly or partly supported by his labor."

No such fact appears in this case. There was no family supported by the labor of French. Being a householder is one thing, and having a family supported by his labor is another. The proceeds of the milk delivered at the Condensary were not "the earnings" of French within the meaning of this statute. He has not asserted any exemption or made any claim to these sums as earnings. This question is settled by Prince v. Brett, 21 App. Div. 190, 47 N. Y. Supp. 402; and Mulford v. Gibbs, 9 App. Div. 490, 41 N. Y. Supp. 273; Re Wyman, 76 App. Div. 292, 78 N. Y. Supp. 546; Martin v. Sheridan, 2 Hilt. (N. Y.) 586; Vain Vechten v. Hall, 14 How. Prac. (N. Y.) 436.

The conclusions and holdings are:

[12] 1. The hay tedder was the consideration for the property note which was a valid lien thereon, and consequently its proceeds, $9, belong to Jewell.

2. The first chattel mortgage, that of May 1, 1915, was and is valid, and hence the proceeds of the property covered thereby belong to Jewell.

3. The second chattel mortgage, that of September 23, 1915, was and is voidable and void as a preference, except as to the stoves, which sold for $29.25, and that part of the proceeds of the sale amounting to $95.50 belongs to Jewell.

[13] 4. The $30 received by Jewell from the sale of property covered by such second chattel mortgage, and not forming a part of the $95.50, belong to the trustee, and must be returned by Jewell as a condition of allowing his claim, but, this being a court of equity, the one sum, $29.25, may be offset against the other, said $30, and as a condition of having his claim allowed Jewell must return or pay to the trustee the difference, or 75 cents. Of the proceeds of the property covered by the second chattel mortgage and sold for $95.50, less the $29.-25 or $66.25 and now in the hands of the trustee in bankruptcy, that sum belongs to him as such, or the estate in bankruptcy, and he will retain the same and all of said $95.50 because of the offset above made and directed.

5. The orders given by French to Jewell on Borden's Condensed Milk Company are voidable and void as a preference, and the $13.28 received by Jewell on the one given for the proceeds of the September milk must be returned to the trustee as heretofore stated as a condition of having his claim allowed, making a total of $14.03 to be returned or paid by Jewell to the trustee.

6. If such $14.03 is returned and such preferences surrendered, then the claim of Jewell will be allowed at the sum of $224.18. If such sum is not paid over to the trustee and the preferences surrendered, such claim will be disallowed, rejected, and expunged from the list of proved and allowed claims, and in such event the trustee will sue for

and recover such preferences for the benefit of the estate. At his election the dividend of Jewell on the $224.18 may be ascertained and deducted from the $14.03, if less than that sum, and he pay the balance to the trustee, or, if the dividend be more than $14.03, then the balance due Jewell will be paid by the trustee.

There will be an order accordingly.