### In re BUCKLEY.
### No. 5839.

District Court, W. D. Louisiana, Monroe Division.

Aug. 29, 1938.

H. W. Ayres, of Jonesboro, La., for bankrupt.

W. T. Holloway, of Jonesboro, La., for T. C. Wyatt.

J. M. Grimmet, of Shreveport, La., referee in bankruptcy.

T. J. Coenen, Jr., of Rayville, La., trustee.

DAWKINS, District Judge.

Frank Kelly Buckley was adjudged a bankrupt on May 27, 1937. His schedules listed a small tract of land, which he valued at $1,000, $300 worth of household goods and a shot-gun, valued at $4.50, or a total estate of $1,304.50, all of which he claimed as exempt under the homestead and other exemption laws of the State. Creditors were listed in the total amount of $883.97, among which was a judgment in favor of T. C. Wyatt, in the sum of $519.22, rendered in the State court of Jackson Parish, on June 30, 1936, and recorded in the mortgage records on September 15, 1936.

A trustee was appointed August 7, 1937, who, instead of obtaining an order, setting aside the property claimed as exempt, ostensibly of his own motion, and without request of any creditor, so far as the record discloses, applied to sell the homestead which he recited had been appraised at $600, at private sale, "free of all liens and encumbrances",—quite an unusual proceeding.

Opposition thereto was filed by Wyatt, the judgment creditor, on the ground that (1) by claiming the entire property surrendered on his schedules as exempt, the bankruptcy court had been divested of jurisdiction and opponent's recorded judgment had become a valid "lien and privilege on the said property until paid or same has been allowed to prescribe"; (2) that by consenting to the sale and having "submitted a bid for private sale, that he (the bankrupt) automatically waived his homestead * * * and is estopped under the laws" of the State and United States "to either have the property sold at private sale, free of any liens and encumbrances, or to claim the proceeds as an exemption * * *"; and (3) that it "would work a material hardship upon your petitioner and opponent and would permit the debtor to enjoy the profits of his plan and scheme to defraud his creditors; that he would be retaining his property and at the same time destroy any privileges and liens that originally operated against the same; that such a procedure is inequitable and contrary to both law and justice."

Opponent prayed that the application to sell be rejected "and that the property be ordered to be sold for cash to the highest bidder, the cash to be applied on the debts as listed, free of any homestead claims and exemptions, or that if the same be sold that it be sold subject to any liens, claims or encumbrances."

Hearing was had, but the Referee recites: "No testimony was offered" by either side, but "counsel for opponent admitted that the bankrupt was such a person as would be entitled to a homestead claim, but urged that after claiming the property in kind, he could not subsequently ask that it be sold and then claim Two Thousand Dollars in lieu of his exemption."

"While no evidence was taken, counsel, (presumably for the bankrupt) stated that a private bid of Two Thousand Seventy-five and no/100 ($2,075.00) Dollars had been submitted; that bankrupt intended to re-acquire the property after the sale and when he had been paid the $2,000, and that by this process of sale, free of liens, the judicial mortgage would be erased from the records and evaded. Bankrupt would then have his home, clear of liens;

whereas, if the homestead was set aside in kind, the judicial mortgage would remain in force and effect and could be enforced if the homestead claim should subsequently· fail. Schexnailder v. Fontenot, 147 La. 467, 85 So. 207.

"Counsel contended that it was a question of law to be considered as there was no controversy over the facts."

The Referee overruled the opposition and ordered the private sale to be made.

Thereafter, opponent moved to re-open the case on the ground of newly discovered evidence, in that the bankrupt "prior to the filing of his proposal, purchased a lot in Jonesboro, Jackson Parish, for the purpose of building a house thereon and using the same as a dwelling as contemplated by the homestead laws of this State"; that to conceal the fact, he had the deed made in the name of his niece for the "purpose of defrauding your petitioner" and the deed to his niece was a "sham"; that the bankrupt was not in good faith in claiming the title involved in this proceeding as a homestead, but merely sought to free it from petitioner's lien to "evade the payment of his just debts". Further, that the bankrupt had applied for a discharge before his proposal to have the property sold and to buy it in was made.

The matter was re-opened and further hearing had on April 25, 1938, at which the bankrupt admitted, "I got my niece to buy it (the property referred to in the motion to re-open) for me"; and further on in his testimony, that he had reimbursed his niece to the extent of $200 of the $400 paid for this subsequently acquired property. When asked what he intended to do with it, Buckley replied: "I can't say; I may sell it; in fact, I may sell it or some day later on build a house on it; or maybe trade it,—no telling."

The bankrupt further admitted, under oath, that he had made the offer for purchasing the exempt property sought to be sold in this case.

The Referee finally reinstated his order to the trustee to sell the property at private sale, provided it brought in excess of the $2,000 claimed as a homestead exemption, and Wyatt, the creditor, has sought a review by the court.

### Opinion.

■ It seems clear that the bankrupt, or his representative, alone has induced the trustee to make this application for it would hardly make sense to say that this officer, of his own motion, had decided to ask that the small piece of land, with its improvements, which the bankrupt valued at $1,000, and which the trustee states was appraised at $600, should be sold with the idea of realizing anything for the general creditors whom he represents. It is also reasonably clear that no one else, except the bankrupt, who can use his homestead exemption of $2,000 to buy, would, for a moment, be willing to pay any such price. The additional $75, we are justified in concluding, was added to give the appearance that the property was worth, or could be sold for more than $2,000. This, however, is not a bona fide proposition, and the patent purpose is, by a mere fiction or the form of a sale, to enable the bankrupt to discharge the lien against his homestead, amounting to in excess of $500, for the sum of $75, by having the trustee, who has no title, sell it to him at private sale. The bankrupt allowed the judgment of Wyatt to become a valid lien against all of his real estate by not filing his petition to be adjudged a bankrupt within the four months following its recordation, and the lien creditor occupies a position of advantage, which neither the bankrupt nor any other creditor can destroy by voluntary or enforced sale, and which, if Buckley ever moves off or ceases to enjoy the status of one entitled to a homestead, can be enforced, notwithstanding the discharge in bankruptcy. See Schexnailder v. Fontenot, 147 La. 467, 85 So. 207, cited by the Referee. Undoubtedly, if the property was worth and there was a possibility of receiving a bona fide offer which would produce for the common creditors a substantial equity, the property could be sold free of encumbrances and the bankrupt could claim his homestead out of the proceeds. No such condition exists here.

■ The title to the property exempt under the laws of the State does not pass to the trustee, and it is his duty, when claimed, to set it aside as such when it becomes clear that the bankrupt is a person entitled to claim it, as here, and the fair value of the property does not exceed the amount allowed by the State law. The bankruptcy court has jurisdiction only for the purpose of determining these matters and cannot require its sale, even on the petition of creditors holding a

waiver, or otherwise entitled to compel the application of the exempt property to the satisfaction of their claims. Ingram v. Wilson, 8 Cir., 125 F. 913; Norwood v. Watson, 4 Cir., 242 F. 885; Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061; In re Nixon, 34 F.2d 667, 668; In re Cale, 8 Cir., 191 F. 31; Huntington v. Baskerville, 8 Cir., 192 F. 813; In re Remmerde et ux., D.C., 206 F. 822; In re Hartzell, 8 Cir., 209 F. 775, 776; In re Vonhee, D.C., 238 F. 422, 423; Clark v. Nirenbaum, 5 Cir., 8 F.2d 451; In re Rabb, D.C., 21 F.2d 254, and Baumbaugh v. Los Angeles Morris Plan Co., 9 Cir., 30 F.2d 816.

In the last cited case the situation was somewhat analogous to that presented here. The bankrupt had certain of his property seized, and in order to escape from an embarrassing situation, gave a chattel mortgage upon the exempt property, which the trustee sought to have declared void, on the ground that it constituted an illegal preference. The bankrupt then attempted to favor this situation by appearing and waiving the exemption. In disposing of the matter the court said:

"It was conceded by counsel for appellant on the hearing that the property covered by the chattel mortgage is, by the laws of California, exempt from execution. The title, therefore, did not pass to the trustee but remained in the bankrupt, and was not subject to administration by the bankruptcy court. Section 70, Bankruptcy Act (11 U.S.C.A. § 110). The fact that the act conferred on the bankruptcy court authority to control exempt property, in order to set it aside, does not mean that the court can administer it as an asset of the estate. It is therefore of no concern to the general creditors what disposition a bankrupt makes of exempt property, and a mortgage or transfer thereof cannot be treated as a preference, since in no event would the trustee be entitled to the property. [Citing cases above]. At the hearing before the referee the bankrupt signified his willingness to waive his exemption, but this he should not be permitted to do against a mortgagee in good faith. In re French (D.C.) 231 F. 255."

■ My conclusion is that the ruling of the Referee was erroneous and that all this court has jurisdiction to do is to direct the trustee to set aside the property scheduled as exempt, leaving the creditor Wyatt to his remedies in the State Court.

Proper decree should be presented.