No. 107.—J. T. SWAN v. ANN L. GAYLE, Administratrix—AMANDA J. KNOX et al., Intervenors.

The right given by law to the vendor to have the sale dissolved on the failure of the purchaser to comply with the terms thereof, by paying the price stipulated, is not transferable, and does not pass with the transfer of the notes or obligation of the purchaser held by the vendor. In such a case only the right of the vendor to enforce the payment of the notes with the securities, passes to the indorsee, but not the right to rescind or disturb the sale itself.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Ray, J. Richardson & McEnery*, for plaintiff and appellee. *Garrett & Garrett*, for defendant (administratrix), appellant. *Morrison & Farmer*, for intervenors.

WYLY, J. In July, 1859, H. Filhiol sold to W. H. Gayle the house and lot in Monroe, described in plaintiff's petition, for $6050, evidenced by the three promissory notes of the latter, made part of the petition, and also another note for $2000, which has been paid.

The plaintiff, the indorsee of said notes, sues the defendant, the administratrix of the succession of the vendee, to dissolve the sale for non-payment of the price. The court ordered the defendant to pay the price within the time fixed in the decree, and in default thereof ordered the dissolution of the sale as prayed for.

From the evidence we are satisfied that the notes evidencing the obligation of the buyer have not become prescribed.

The main question in this controversy is, can the resolution of the sale be demanded by the indorsee of the notes representing the unexecuted legal obligations of the buyer ?

We think that it can.

The owner of the notes owns the unexecuted obligation of the buyer with all the securities and remedies provided by law for its enforcement.

The conveyance of perfect ownership by the seller and the delivery of the possession, completed the execution of the contract of sale on his part; the corresponding obligation of buyer was deferred till the maturity of the notes. His engagement was to pay the price or restore the thing. The performance of the one or the other, the express or the implied condition, would discharge the legal obligation on his part. The decree dissolving the sale executes the contract as fully as the decree ordering the payment of the price.

Whether the express or the implied condition be performed by the buyer is immaterial; the performance of either consummates his engagement.

" If the buyer does not pay the price the seller may sue for the dissolution of the sale." R. C. C. 2561. Why ? Because, taking the thing upon two conditions—the one expressed to pay the price, the

other implied to restore the thing—he is liable to be pursued by the seller for a compliance with either condition after being in default for the price. As security for the obligation of the buyer, the seller may demand the price with the vendor's privilege on the thing sold, or he may demand the restoration of the thing itself.

These are the remedies provided by law for the enforcement of the obligation of the buyer.

The vendor's right to pursue either remedy does not result from an obligation personal to himself; it is only because he is the owner of the obligation of the buyer.

The owner of a legal obligation is necessarily clothed with all the remedies provided by law for its enforcement.

It would be absurd to say that the owner of a legal obligation does not own the remedy or remedies provided by law to compel its execution. Having the legal right, he owns the corresponding legal obligation of the buyer, whereby is imposed on the latter the juridical necessity of performing or discharging that right or duty in the manner provided by law. The duty of the buyer may be discharged by payment of the price or by restoration of the thing; and the only person who can invoke the law to compel this discharge of duty is the party owning the obligation. He alone is aggrieved where the buyer is in default for the price; and he alone has cause to complain.

We think the right and the remedy or remedies are inseparable.

The right to compel the performance of the obligation in the case before us belongs to the plaintiff as the owner of the notes, evidencing the unexecuted obligation of the buyer, and he has the right to ask the intervention of the State to compel its performance. He may demand the application of the remedies of the law in such cases made and provided.

In George, curator, *v.* Lewis, 11 An. 655, this court said: "The dissolution of a commutative contract for non-compliance by either party with his engagements is really the carrying into effect of a part of their convention, either express or implied. *    *    * The plaintiff might have sued successfully for the price and claimed the vendor's privilege on the land. He resorted to a concurrent remedy by demanding the dissolution of the sale," etc. See also the authorities cited in that case.

The character of the dissolving condition was determined by this court as early as 1824, and the correctness of the ruling has not since been questioned. Torregano *v.* Segura, 2 N. S. 159. In that case where the surety of the buyer for the price of a slave paid the debt and sued the syndic of the latter to dissolve the sale, on the ground of legal subrogation existing in his favor, whereby he became entitled to pursue the same remedy as the vendor, it was urged in defense "that

although the plaintiff as indorser was bound *in solido* with the vendee, he is nevertheless a third party as regards the contract, and does not become subrogated to the rights of the vendor (the right to dissolve the sale) unless this be expressed in a notarial act at the time of the payment. C. C. 288, 150.

Further, that without this formal subrogation the plaintiff could not have an *apparajada* execution, because there would be no transfer of the judgment which the act of mortgage imports; neither can he bring the action of rescission, because he is not a party to the sale, and were it rescinded, the title would revert to the vendor, so that the plaintiff could have no benefit thereby." The court decided through Judge Martin, its organ, that "the subrogation is of the right of the creditor, not against the debtor only, but also against the securities, C. C. 188, 149 and 152, and like a transfer of a debt, it includes everything which is accessory thereto, as suretyship, privileges and mortgages. C. C. 368, 124.

"The rescission of the sale is a means of securing the payment which the vendor, the creditor of the price, has. This right is an accessory of the claim, and would pass by the sale or transfer of it. The subrogation has, in our opinion, the same effect."

Now, as there is no doubt that the plaintiff owns the claim or debt evidenced by the notes, it follows that he also owns the accessory right or remedy of resolution appertaining thereto, and it passed to him by the indorsement of the notes.

As to the argument that the plaintiff can not demand the dissolution of the sale, because he was a third party, and were it dissolved the title would not vest in him but in the vendor, so that he could not be benefited thereby, we will remark that was the ground taken in the case decided in 1824, and Judge Martin attached but little importance thereto, and we entirely concur in his conclusion.

Whether Gayle was insolvent or not could not defeat the resolutory action. This was also made a point, without effect, in Torregano *v.* Segura's Syndic, to which we have referred. The dissolving condition was not lost by failure to reinscribe the mortgage within ten years. 12 An., Johnson *v.* Bloodworth, 699, and authorities there cited.

There is no force in the plea of the prescription of ten years, *acquirendi causa*. The buyer in default for the price can not urge that defense to the enforcement of the unexecuted obligation lying at the foundation of his title. As long as the obligation of the buyer subsists and may be enforced in either the modes provided by law, he will not be heard pleading his possession of ten years in bar of the enforcement of the condition on which he acquired that possession. His title, as to his vendor, was not indefeasible as long as his legal obligation to pay the price subsisted. As to the failure of the plaintiff to offer to restore

the installment which he received before demanding the resolution of the sale, we will observe that the record furnishes ample evidence of a sufficient offer. Only one of the notes was liable to the plea of prescription of five years, and that was waived by Gayle in 1867, the waiver being indorsed on the notes.

The other defenses are not of a serious character.

It is therefore ordered that the judgment appealed from be affirmed with costs.

LUDELING, C. J.   I concur in the decree in this case, on the authority of Torregano v. Segura, 2 N. S. 159.

HOWE, J., concurring.   The question whether the transfer of a note given for the price of lands carried with it to the transferree the right to dissolve the sale, is not free from difficulty. I think, however, it was decided in the affirmative in Torregano v. Segura, 2 N. S. 162, and we are under no obligation to reopen the discussion. I concur in the decree affirming the judgment of the district court.

HOWELL, J.   Not being able to concur in all the views expressed by the majority of the court in this case, the right to file my own at a subsequent date is reserved to me by the court.

## ON REHEARING.

LUDELING, C. J.   This is a suit for the dissolution of a sale for the non-payment of the price.

On the eighteenth of July, 1859, H. Filhiol sold a house and lot in the town of Monroe to W. H. Gayle for $6050, for which four promissory notes were executed—one due January, 1860, for $2000, and three others each for $1350, due on the first of March in the years 1861, 1862 and 1863. The first of these notes was paid by Gayle, and the other three were transferred to Joseph T. Swan by the following indorsement on the back of each :   " Without recourse, H. Filhiol."   On the ninth of February, 1867, suit was instituted against the succession of Gayle by the plaintiff in this suit for the amount of the three notes held by him, which was dismissed for want of jurisdiction ratione materiæ. 21 An. 478.   And then this suit was instituted, after first procuring from Filhiol what the plaintiff calls an act of subrogation, which recites that he had "heretofore transferred and delivered to J. T. Swan" the said notes, and that "it was his intention to transfer to him, with said notes,

all the rights said Filhiol had against Gayle growing out of said purchase of the above property from Filhiol, and not only subrogate said Swan to all his (Filhiol's) rights in and to said notes and the mortgage and privilege to secure their payment, but also to said Filhiol's right to have the sale set aside for the non-payment of the price," etc. This act was passed on the fourth of September, 1869, about two years after the transfer of the notes to Swan. To the reception of this document the defendant objected, on the grounds that it was *res inter alios acta*; that it was an attempt to introduce in evidence against him the unsworn declarations of Filhiol, and without affording him an opportunity to cross-question him; and that it was an attempt to contradict, vary and explain the transfer in writing on the back of the notes. These objections, we think, should have been sustained. 22 An. 322; 23 An. 589, 445. But if the act were properly in evidence it would not materially change the facts. Filhiol could not subrogate Swan to anything which did not pass at the date of the sale of the notes. 5 R. 207; 19 R. 477; C. C., article 2160.

The questions presented for solution in this case are important, and two of them we think have never been directly decided by this court, to wit: Whether the right of the vendor to dissolve the sale for the non-payment of the price can be sold by him, and whether that right is an accessory to the notes evidencing the unpaid price? We do not deem it necessary in this case to pass upon the first question, as there evidently was no sale of this right, unless it passed to Swan as an accessory to the notes acquired by him. Two cases have been referred to in which expressions are used by this court which would indicate that the court considered that right to be an accessory of the notes. In Torregano *v*. Segura, 2 N. S. 158, the court said: "The rescission of the sale is a means of securing the payment of the price, which the vendor, the creditor of the price, has; this right is an accessory of the claim and would pass by the sale or transfer of it." In the case of the Citizens' Bank of Louisiana *v*. Cuny and others, the court said: "The vendor's privilege gives to the vendor, in addition to the right to have the property sold to pay the price, a rank in relation to other creditors of the vendee which he might not otherwise have. It confers upon the vendor a right to the rescission of the sale on the non-payment of the price." 12 R. 281. In both cases, however, the expressions were used *arguendo*. The question before the court for decision in those cases did not require the decision of this point. In the latter case the only question presented was whether the cancellation of a special mortgage given to secure the payment of notes for the price for lands destroys the vendor's privilege to secure said notes.

In the case of Segura there was no sale or transfer of a note or credit. The surety who had signed the notes with the vendee, and

who had paid the notes, asserted by that law he was subrogated to all the rights of the vendor.

On the other hand, in the case of Johnson v. Bloodsworth, the court used the following language : " But it is impossible to confound the resolutory action with the vendor's privilege. The former is not a mere appendage of the latter." 12 An. 699. And this also was said *arguendo*, for the question before the court was: "When the vendee of a slave, holding by private act unrecorded, has mortgaged the slave to a third person by public act duly registered, can the unpaid vendor enforce the implied condition against this vendee to the prejudice of the mortgage creditor of the latter?"

These expressions ought not to be regarded as authoritative, and we will treat the question as a new one not adjudicated upon by this court.

" The sale or transfer of a credit includes everything which is an accessory to the same." C. C. 2645. " A principal contract is one entered into by both parties on their own accounts, or in the several qualities they assume. An accessory contract is made for assuring the performance of a prior contract, either by the same parties or by others; such as suretyship, mortgage and pledge." C. C. 1771. The accessory obligation or right, then, is something which may aid to enforce the principal obligation; if the principal obligation is extinguished the accessory right ceases to exist also.

The action for the resolution of the sale implies and presupposes the renunciation of the right to demand the payment of the price. "If the buyer does not pay the price, the seller may sue for the dissolution of the sale." C. C. 2561.

" Now, a right which can not exist so long as another right exists, can not be an accessory of the latter."

Mr. Marcadé says :

" Loin que le premier droit soit l'accessoire du second il ne coexiste même pas avec lui, il ne lui est pas concomitant, il ne p end naissance qu'après que celui-ci a cessé d'exister: la demande en résolution implique et présuppose la renonciation au droit de demander paiement, la renonciation à la créance; ou, un droit qui ne peut pas exister tant qu'existe un autre droit ne peut certes pas être l'accessoire de celui-ci."

Marcadé, vol. 6, p. 334, commenting on article 1692 Mr. Duvergier says, No. 222, p. 259 :

" Que le vendeur payé en billets, en transmettant ces billets à un tiers, lui cède le droit d'exiger le paiement et aussi le privilége; c'est-à-dire, le droit d'être payé par préférence, mais *ne lui cède pas l'action en résolution de la vente,* parce que cette action n'est pas l'accessoire du droit *d'exiger le paiement; elle suppose, au contraire, le non-paiement.*"

What did Filhiol sell to Swan? Three notes with the accessory

rights of mortgage and vendor's privilege to enforce their payment—nothing else. And Swan acquired no other right from Filhiol than such as are necessary to enforce the payment of those credits or debts. The right attempted to be exercised in this case is certainly not to collect those notes.

Suppose Filhiol had sold the property for less than half its value, could it be pretended that in buying the notes given for the price Swan acquired Filhiol's right to rescind the sale for lesion beyond moiety? He did not buy all the rights of the vendor resulting from the contract of sale to Gayle, but only the notes with their accessories. He did not by buying the notes take the place of Filhiol in the contract of sale, else the purchaser of a negotiable note, given for the price of property, would become the warrantor of the title to the property. A proposition which leads to such an absurd conclusion ought not to be sustained by a court of justice.

This view of the case renders it unnecessary to pass upon the questions of default, tender and prescription raised in this case.

It is therefore ordered and adjudged that the judgment of this court heretofore rendered in the case be set aside, that the judgment of the court a qua be reversed and annulled, and it is decreed that there be judgment in favor of the defendant rejecting the plaintiff's demand, with costs of both courts.

---

WYLY, J., *dissenting.* I adhere to the former opinion of this court in this case. The right to dissolve the sale is either a principal or an accessory contract. It must fall in the one or the other of these classes. So far as the result of this case is concerned it is immaterial under which class the court places it.

If it is an independent or principal contract it can be transferred, separate from the notes, at any time the owner sees fit to do so. It is only accessory contracts that must pass by subrogation at the time of the transfer of the principal contract. By the notarial act of the fourth of September, 1869, Filhiol declares that at the time he transferred the notes to Swan he intended not only to convey the notes and the mortgage and privilege to secure the payment, "but also his (Filhiol's), right to have the sale set aside for non-payment of, the price." Here, then, in September, 1869, Filhiol transfers or donates, under the form, of a sale, his independent right or contract (if such it may be called) to dissolve the sale. Yet the court rules out of the evidence the notarial act showing the transfer of what the court in the latter part of its opinion practically treats as an independent contract.

If the right to dissolve the sale be an independent contract, and the finding of the court rests upon no other hypothesis, the transfer by

authentic act of that independent right or contract was admissible, the lower court did not err in receiving it, and this court erred in ruling it out on this rehearing. In other words, in my judgment, this court ruled out the transfer of September 4, 1869, on the hypothesis that, being an accessory contract, it should have been made at the time of the transfer of the notes ; and then turned round and decided against the enforcement of the dissolving condition on the hypothesis that it was not an accessory contract, but an independent contract which had not been transferred.

I repeat, that if the right to dissolve the sale be an independent contract, the transfer thereof by authentic act in September, 1869, was permissible, and the court had no right to rule out this authentic evidence of the transfer, unless the court should hold that this right is not transferable. I hardly imagine that a contract of this character will be considered personal and not transferable. This right is property, and all property is transferable, except such as is by law excepted from the general rule, that the right of disposition or the right to sell is essential to perfect ownership.

Therefore, if the right in controversy is an independent right which the owner could transfer at any time, the plaintiff, the transferree of that right under the notarial act of September 4, 1869, can enforce it.

But if the right to dissolve the sale be an accessory right or a remedy incident to the principal contract of sale, as I believe, the plaintiff, the owner of the obligation, can enforce it without an act of transfer or an act of subrogation. Now, the rule that " a right which can not exist so long as another right exists, can not be *accessory* to the latter," has no application to this case.

The right to dissolve the sale exists from the beginning or the date of the sale, but it does not become exigible till the debtor of the contract is in default for the price.

The accessory contract of warranty exists from the day of the sale, because of the nature of the contract, yet it is not exigible and never becomes so till the eviction of the purchaser occurs.

The right to dissolve the sale is, in my judgment, an incident of the contract of sale ; it is an accessory contract with a suspensive condition ; but a perfect and complete one from the date of the sale, notwithstanding the suspension thereof.

I can not agree with the organ of the court that what was said by Judge Martin in Torregano *v.* Segura, 2 N. S. 159, was merely *arguendo, expressions not necessary to the decision of the case,* and therefore not authoritative. The decision speaks for itself. Upon the basis that the dissolving condition is accessory to the principal contract of sale the court held that the plaintiff, the surety, who paid the debt became subrogated thereto, became the owner of the debt, the creditor.

·of the contract, and as such acquired with it all the accessory rights, including the right to dissolve the sale.

For these reasons and those stated in the first opinion rendered by this court in this case, I respectfully dissent from the views expressed ·by the majority of the court.

HOWE, J. In my opinion our decree should remain undisturbed. By the transfer of the notes and the special assignment of Filhiol's rights as vendor (both of which were subjects of transfer) the plaintiff became vested with all the rights of the original vendor. Duvergier's Toullier, vol. 17, 275, citing Sirey 26, 2, 189; Dalloz 26, 2, 156; Sirey ·23, 2, 57; Rogron's C. N. 1692; Paillet's C. N. 422; Lahaye's C. N. 1692; Torregano v. Segura, 2 N. S. 158.

There is no question of subrogation in the case, either legal or con-·ventional, for there has been no payment, and without payment there ·can be no subrogation. Rogron's C. N. 1248, 1249 and 1250; C. C. of 1825, articles 2155 and 2156. The case is governed by the rules in regard to sales.