This exception was maintained January 2, 1920, and the suit was dismissed.

If the death of Monvoisin on October 16, 1919, was caused by the accident which befell him on September 29, 1917, the Compensation Act does not give a right of action to his survivors, as the death did not occur within one year from the date of the accident. The judgment dismissing plaintiff's second amended and supplemental petition was correct.

Affirmed.

<hr>

(85 South. 207)

No. 23670.

SCHEXNAILDER v. FONTENOT, Sheriff, et al.

(Feb. 2, 1920. On rehearing May 31, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Bankruptcy ☞4—Purpose of federal bankruptcy law and of state insolvency Code stated.**

The purpose of the federal bankruptcy law, as well as the Louisiana Code on insolvency, is to permit the unfortunate debtor who finds himself unable to pay his debts to surrender his present property to his creditors for application to the payment of their claims, and thereby obtain relief from all further liability in the future.

2. **Judgment ☞776 — Recorded money judgment became a general judicial mortgage lien on judgment debtor's property.**

A money judgment placed on record in the mortgage office became a general judicial mortgage and lien upon all property owned by the judgment debtor at that time, whether exempt or not, prior to all subsequent judicial or conventional incumbrances which might attach.

3. **Homestead ☞167—Judgment debtor's right ceases if he chooses to sell homestead.**

So long as a judgment debtor continued to own and live upon a homestead and to be entitled to the exemption, the judgment creditor could not subject it to the payment of his judgment, unless it acquired a value in excess of the $2,000 provided in the Constitution, but if the judgment debtor chooses to sell it his right to the homestead ceased, and the judgment creditor could immediately subject the property to payment of its debt, provided the judicial mortgage and lien were duly kept alive.

4. **Bankruptcy ☞400(1) — Homestead claim set apart by bankruptcy court excluded from bankruptcy proceedings.**

When a bankrupt claimed his homestead and had it set apart, it was excluded from the bankruptcy proceedings and the jurisdiction of the bankruptcy court as completely as if it had never been placed upon the bankrupt's schedules, and thereafter a creditor with a lawful special or general waiver of the exemption, or against whom the exemption did not apply, would have to resort to the state courts for its enforcement.

5. **Bankruptcy ☞9(1)—Bankruptcy law intended to preserve rights of creditors under state laws.**

It was the purpose of Congress in enacting a national insolvency law to preserve, rather than destroy, any of the rights or advantages enjoyed by creditors under the laws of the states, save to the extent that they are repugnant to or inconsistent with the specific provision of the bankruptcy law, in view of Bankruptcy Act 1898, § 67d (U. S. Comp. St. § 9651).

6. **Bankruptcy ☞433(5)—Discharge does not destroy a mortgage lien upon bankrupt's exempt realty.**

A discharge in bankruptcy does not destroy a mortgage lien upon the bankrupt's real property subject to exemption, but merely his personal liability.

7. **Mortgages ☞51—Personal liability is not essential to the existence of a mortgage.**

While Rev. Civ. Code, art. 3285, requires that there be a principal indebtedness or obligation to support the necessary stipulation or

lien of a mortgage, this does not mean that there shall be a personal liability, as under arts. 2012, 3282, a mortgage, whether conventional or judicial, imposes a real right or obligation upon the property bound for its discharge, and in view of article 2013 and article 3296 et seq., there may be a stipulation that mortgagor shall not be personally liable.

**8. Mortgages &#x25c8;&#x2501;1—Mortgage, in addition to debtor's personal liability, gives mortgagee a right to debtor's property.**

In view of Rev. Civ. Code, art. 3278, defining a mortgage, the creditor's right attaches to the property and gives him the power, in addition to the personal liability of his debtor, to pursue it for the satisfaction of his debt if it is not paid and if the mortgage is not extinguished in one of the ways provided by law.

**9. Mortgages &#x25c8;&#x2501;309(1)—Personal release of debtor does not extinguish mortgage.**

Under Rev. Civ. Code, art. 3411, providing that mortgages are extinguished by the extinction of the debt for which the mortgage was given, etc., the personal release of the debtor would in no sense, from the creditor's standpoint, discharge or extinguish the debt, though it would operate as a bar to the further pursuit of the debtor personally, or his future property.

**10. Bankruptcy &#x25c8;&#x2501;433(5)—Mortgage inscribed more than four months before petition in bankruptcy is not extinguished by a discharge.**

Under Rev. Civ. Code, art. 3411, providing how mortgages are extinguished, and article 2130, prescribing how obligations are extinguished, a judicial mortgage inscribed more than four months before the filing of a petition in bankruptcy against the mortgage debtor is not discharged by such petition or by his discharge in bankruptcy.

O'Niell, J., dissenting.

*(Syllabus by the Court.)*

On Rehearing.

**11. Bankruptcy &#x25c8;&#x2501;198—Lien obtained by record more than four months before debtor's petition in bankruptcy is preserved.**

It would be an inadmissible interpretation of the Bankruptcy Act (U. S. Comp. St. §§ 9585–9656) to hold that it maintains a lien and at the same time destroys it by destroying the obligation upon which it rests. The reasonable interpretation is that, in preserving the lien resulting from recording a judgment or levying an attachment upon an ordinary claim, the statute preserves the claim to the extent necessary to make the lien effective.

Sommerville and O'Niell, dissenting.

Certiorari to Court of Appeal, St. Landry Parish.

Suit for injunction by Benjamin Schexnailder against D. W. Fontenot, Sheriff, and others. Judgment in the district court for plaintiff perpetuating the injunction, and on appeal to the Court of Appeal the injunction was dissolved and defendant awarded damages for attorney's fees and costs and plaintiff obtained a writ of certiorari. Judgment affirmed.

Gilbert L. Dupre, of Opelousas (E. B. Dubuisson, of Opelousas, amicus curiæ), for applicant.

Dudley L. Guilbeau, and R. Lee Garland, and Smith & Carmouche, all of Crowley, for appellees.

DAWKINS, J. In March, 1914, E. M. Boagni recovered judgment against Benjamin Schexnailder in the sum of $833.34, and promptly had the same recorded in the mortgage records of St. Landry parish. Some 14 months later Schexnailder obtained a discharge in bankruptcy (the petition in bankruptcy having been filed more than four months after the recordation of the judgment) and had certain property set apart to him as exempt under the homestead laws of this state. Thereafter the plaintiff in the suit in the state court issued a writ of fieri facias on the judgment so obtained and recorded, and seized the property which had been exempted and set apart in the bankruptcy proceedings. Plaintiff brings this suit to enjoin said seizure on the ground that the judgment and lien resulting from its recordation had been annulled by the discharge in bankruptcy. He prayed that the injunction be per-

petuated for attorney's fees and such other damages as might be proven upon the trial.

Defendant filed an exception of no cause of action and asked that the injunction be dissolved with statutory damages and attorney's fees. This exception having been overruled, defendant in injunction answered, alleging that the judicial mortgage resulting from the recordation of his said judgment was still in force against said property, and asked that the injunction be dissolved with damages and that the execution proceed according to law.

There was judgment in the district court in. favor of plaintiff, perpetuating the injunction, and for the sum of $250 as attorney's fees. Defendant appealed to the Court of Appeal, where the judgment of the district court was reversed, the injunction dissolved, and the defendant awarded the sum of $250 as damages for attorney's fees and costs. Plaintiff obtained from this court a writ of certiorari, and the matter is thus brought before us for determination.

## Opinion.

Both the district court and Court of Appeals rendered well-considered written opinions, but arrived at conclusions directly opposed to each other.

The facts are not disputed, and the question is purely one of law, that is: Did plaintiff's discharge in bankruptcy destroy defendant's judicial mortgage and lien resulting from the recordation of the judgment more than four months prior to the petition in bankruptcy, so as to preclude its enforcement against the property set aside as exempt under the state homestead law?

It is well to state in the beginning that plaintiff is not claiming in the present suit the exemption, but relies solely upon the alleged cancellation and annulment of the judgment, mortgage, and lien by the discharge in bankruptcy.

Defendant did not prove his claim in bankruptcy, and therefore received no part of the bankrupt funds.

[1] A determination of the question thus presented requires, in our opinion, an interpretation of the Bankrupt Act along with our state law. It is well known that the purpose of the federal bankruptcy law, as well as the provisions of our Code on insolvency, is to permit the unfortunate debtor who finds himself unable to pay his debts to surrender his present property to his creditors in order that it may be applied to the payment of their claims, and thereby obtain for himself relief from all further liability in the future, or, in popular parlance, a new start in life. The Bankruptcy Act specifically recognizes the exemption, laws of the several states, save as to those matters with which it itself deals and provides, and the plaintiff was entirely within his rights in claiming and having set apart to him his homestead.

[2, 3] Laying aside, for the moment, the bankruptcy statute, and taking up the state law, we find that when the defendant obtained his judgment and placed it of record in the mortgage office it became a general judicial mortgage and lien upon all real property owned by the plaintiff at that time, whether exempt or not, priming all subsequent judicial or conventional incumbrances which might attach. So long as Schexnailder continued to own and live upon the homestead, and to possess those requisites which entitled him to the exemption, Boagni could not subject it to the payment of his judgment, except in the event it acquired a value in excess of the $2,000 provided in the Constitution. But if Schexnailder had chosen to sell it, or those conditions had ceased to exist, i. e., which supported his claim to the homestead, the judgment creditor could have immediately subjected the property to the payment of his debt, and this is true, no mat-

ter how long he might have been required to wait, provided the judicial mortgage and lien were kept alive in the manner pointed out by law. In these circumstances, there was nothing that the plaintiff could have done, under the state law, which would have loosened Boagni's hold upon the property.

[4, 5] Returning again to the bankruptcy law, when Schexnailder claimed his homestead and had the same set apart, it was excluded from the bankruptcy proceedings and the jurisdiction of that court as completely as if it had never been placed upon his schedules. Brandenburg on Bankruptcy, p. 129, § 181; Id. pp. 132, 133, § 185; Corpus Juris, vol. 7, pp. 362 and 363. Thereafter a creditor with a lawful special or general waiver of the exemption, or against whom the exemption does not apply, would have had to resort to the state courts for its enforcement. It will hardly be contended that bankruptcy could defeat any exceptional right so enjoyed under the local law. On the contrary, it would seem that it was the purpose of Congress, in enacting a national insolvency law, to preserve, rather than destroy, any of the rights or advantages enjoyed by creditors under the laws of the states, save to the extent that they are repugnant to or inconsistent with the specific provisions of the act which it thus passed. Bankruptcy Act of 1898, § 67d (U. S. Comp. St. § 9651). We have looked in vain through the lengthy provisions of this act for anything that impaired or destroyed Boagni's lien upon the homestead. The only thing which prevented the property from passing into the bankrupt estate, there to be administered and applied to the payment of plaintiff's debts (including the enforcement of defendant's judicial lien) was the recognition by this same federal statute (which of itself did not impair Boagni's rights under the state law) of an exemption in favor of the debtor granted by the state Constitution. Had the conditions which supported the exemption failed while the

bankruptcy proceedings were pending, and prior to the discharge, this creditor could undoubtedly have enforced his judgment in the state courts. Can it be that the mere subsequent signing of a decree of discharge, which as to all dischargeable debts relates back to the filing of the petition in bankruptcy, destroy a right upon the property, which up to that moment was clearly enforceable?

[6] The decisions of the courts of the other states are almost uniform to the effect that a discharge in bankruptcy does not destroy a mortgage lien upon the bankrupt's real property subject to exemptions, but merely his personal liability. Century Dig. vol. 6, p. 691 et seq., § 677 (Bankruptcy), and 820; Gregory Co. v. Cale, 115 Minn. 508, 133 N. W. 75, 37 L. R. A. (N. S.) p. 156, and note; R. C. L. vol. 3, p. 322, § 143 (Bankruptcy); C. J. vol. 7, p. 412.

The facts and circumstances, both with respect to the state law and the contention of the homestead claimant, were so similar to the present case in the case of Jackson et al. v. Allen, 30 Ark. 110, we quote therefrom at length, beginning at page 117 of the opinion, as follows:

"But it is insisted for appellants that Sullivan having been adjudged a bankrupt, the land set apart to him as a homestead by the bankrupt court, and he discharged from the judgment debt, the lien of the judgment which was an incident of the debt was extinguished and could never be enforced against the land though he sold and abandoned it as a homestead.

"This proposition is not well founded. The appellees obtained their judgment against Sullivan before the bankrupt proceedings were commenced, and the judgment was a statute lien upon the land. He placed the judgment in his schedule, but the appellees did not prove their debt, or seek any satisfaction of it in the bankrupt court out of his assets.

"By the final adjudication of the court he was personally discharged from the judgment, but the lien upon the land was not discharged or extinguished. Liens are not destroyed but preserved by the bankrupt act. Section 20, Bump, 133, 316; Freeman on Judgments, § 337a.

"The land in question was set apart to Sul-

livan as a homestead because the laws of the state secured the homestead right to him. The bankrupt act and the bankrupt court invested him with no new homestead right, but merely protected him in the enjoyment of such homestead exemption as was given to him by the state laws. After the homestead was assigned and set apart to him by the bankrupt court, the lien of the judgment of the appellees upon the homestead land could not be enforced so long as he continued to occupy it as a family residence, either by the bankrupt court or by the state court. He could have remained upon the land and enjoyed it as a home during his life, his wife could have held it as a home after his death during her life, and his children while minors could have remained upon it under the protection of the law, after she was gone. In the meantime the appellees could revive and keep alive their judgment lien upon the land but could not enforce it by execution so long as the land remained protected by law as a homestead, nor could the judgment have been revived or enforced against Sullivan personally, or against any property acquired by him after he was adjudged a bankrupt, he having been discharged from all personal legal obligation to pay the debt, and the statute lien of the judgment on the land only remaining, and subject to be revived and continued."

See, also, McCance v. Taylor, 10 Grat. (Va.) 580.

These decisions, of course, were rendered under former bankruptcy laws, and prior to the act of 1898, but the principles involved are the same. Article 3285, Civil Code.

[7] It is contended by the plaintiff that under article 3285 of the Revised Civil Code a mortgage cannot exist without a principal debtor or obligor. That article is as follows:

"Consequently, it is essentially necessary to the existence of a mortgage, that there shall be a *principal debt* [Italics ours] to serve as a foundation for it.

"Hence it happens, that in all cases where the principal *debt* is extinguished, the mortgage disappears with it.

"Hence also it happens that, when the principal obligation is void, the mortgage is likewise so; this, however, is to be understood with certain restrictions which are established hereafter."

In the larger sense, this language means that there must be a principal indebtedness or obligation to support the accessory stipulation or lien of the mortgage, but this does not mean that there shall be a personal liability. A mortgage, whether conventional or judicial, imposes a real right or obligation upon the property bound for its discharge. C. C. 2012 and 3282. There is nothing to prevent, and, in fact, it is not uncommon for a mortgage to be given with the stipulation that the mortgagor shall not be personally bound beyond the value of the property so mortgaged. This seems clearly permissible under the broad provisions of article 2013 of the Code, which gives the parties the right to include in their agreements with respect to real obligations any stipulation or condition which the mind may conceive, not contrary to express law. See, also, Robichaux v. Block, 144 La. 859, 81 South. 371. The Code specifically provides that one may mortgage his property for a third person without becoming personally liable. C. C. 3296 et seq. Again, if one gives a mortgage for a person who subsequently proves to be incapacitated to bind himself, as minor or married woman, the obligation is none the less valid. It is only when the obligation is absolutely void or destroyed that the mortgage falls. Id.

[8] The Code (article 3278) defines a mortgage as follows:

"Mortgage is a right granted to the creditor over the property of the debtor for the security of his debt, and gives him the power of having the property seized and sold in default of payment."

In other words, the creditor's right attaches to the property and gives him the power, in addition to the personal liability of his debtor, of pursuing it for the satisfaction of his debt, if the debt be not paid and if the mortgage is not extinguished in some one of the ways provided by law.

[9, 10] "Mortgages are extinguished," says the Code (article 3411):

"(1) By the extinction of the thing mortgaged.

"(2) By the creditor acquiring the ownership of the thing mortgaged.

"(3) By extinction of the mortgagor's right.

"(4) By the extinction of the debt, for which the mortgage was given.

"(5) By the creditor renouncing the mortgage.

"(6) By prescription."

None of these modes of extinguishment, which appear to be exclusive, in our opinion can be construed to cover the situation presented in this case, with the exception of No. 4; and to hold that it was applicable would be to adopt a narrow and unwarranted meaning of the term "extinction of the debt," which it does not reasonably imply. The personal release of the debtor would in no sense, from the creditor's standpoint, discharge the debt, though it would operate as a bar to the further pursuit of the debtor personally, or his future property.

Article 2130, C. C., reads:

"Obligations are extinguished:

"By payment.

"By novation.

"By voluntary remission.

"By compensation.

"By confusion.

"By the loss of the thing.

"By nullity or rescission.

"By the effect of the resolving condition, which has been explained in the preceding chapter.

"By prescription, which shall be treated of in a subsequent title."

Notwithstanding this article has remained a part of our Code, in full force during the period when our own insolvency laws were operative, it will be seen that it does not embrace the release of the debtor under those proceedings as one of the means of discharging an obligation. However, the debtor was just as effectually relieved from his personal liability under the state law when it was in effect as he now is under the federal bankruptcy law. In construing the effect of the state law in question, Morphy, J., in the case of Bank v. Bagley, 10 Rob. p. 44, said:

"But even were the cashier to be considered as authorized to give the insolvent a discharge, it is by no means obvious that it would have the effect contended for. Such a discharge is not an absolute remission of the debt. It is the species of discharge mentioned in article 2173 of the Civil Code, which is a release of the debtor from his personal obligation to his creditor, and can be given in opposition to the wishes of the latter."

In the many cases cited by plaintiff, we find none that involve the question of the effect of a discharge in bankruptcy upon a valid lien acquired against the bankrupt's property more than four months prior to bankruptcy. They were cases in which the debt or obligation itself were either paid or discharged, or where the mortgagee became the owner of the property and the mortgage was thereby extinguished by confusion. On the other hand, in the case of Robinson & Co. v. Cosner, 136 La. 595, 67 South. 468 (quoting from the syllabus, which was by the court), we said:

"A judicial mortgage, inscribed more than four months prior to the filing of a petition in bankruptcy against the mortgage debtor, is unaffected by such petition or by the subsequent discharge of the bankrupt."

For the reasons assigned the judgment of the Court of Appeal is affirmed, at the cost of the applicant herein.

O'NIELL, J., dissents.

On Rehearing.

MONROE, C. J. [11] Our re-examination of this case has satisfied us of the correctness of the judgment heretofore handed down. Other authorities supporting it, besides those cited, are Gray v. Bank of Hartford, 208 S. W. 302 (Sup. Ct. of Ark. Dec. 1918); King v. Bowman, 24 La. Ann. 505; Heard v. Patton, 27 La. Ann. 542; Metcalf v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed.

122; John Leslie Paper Co. v. Wheeler, 23 N. D. 477, 137 N. W. 412, 42 L. R. A. (N. S.) 292 and note; Powers v. Nelson, 10 N. D. 580, 88 N. W. 703, 58 L. R. A. 770; 7 C. J. p. 312; Mallin v. Wenham, 209 Ill. 252, 70 N. E. 564, 101 Am. St. Rep. 233. It would be an inadmissible interpretation of the Bankruptcy Act to hold that it maintains a lien and at the same time destroys it by destroying the obligation upon which it rests. The creditor of an ordinary debt who acquires a lien only by obtaining and recording a judgment, or by seizing property under a writ of attachment, would reap no benefit from the lien, according to that interpretation, and its preservation would be but the preservation of a thing from which all vitality had been withdrawn. The reasonable interpretation, then, is that in preserving the lien the statute preserves the claim from which it springs to the extent necessary to make the lien effective.

The judgment heretofore handed down is therefore reinstated and made the final judgment in the case.

SOMMERVILLE and O'NIELL, JJ., dissent.