No. 4066

Second Circuit

THOMPSON-RITCHIE GROCERY CO. v. CARY ET AL.

(July 14, 1931. Opinion and Decree.)

B. T. Dawkins, of Alexandria, attorney for plaintiff, appellee.

S. R. Holstein, of Jena, attorney for defendant, J. M. Edwards.

A. D. Flowers, of Jena, attorney for defendant, C. H. Cary, appellant.

McGREGOR, J. On June 30, 1923, plaintiff, Thompson-Ritchie Grocery Company, secured a judgment against Dave Shapiro in the Eighth district court in and for La Salle parish for the sum of $472.96, with 8 per cent interest from November 13, 1922, together with 10 per cent of the principal and interest as attorney's fee for collection, and all the cost of court. This judgment was recorded in the mortgage records of La Salle parish, and operated as a judicial

mortgage on all the real property owned by Shapiro at the time or subsequently acquired by him. When the plaintiff obtained and recorded its said judgment, Shapiro was the owner of and in possession of the following described property: A strip 40 feet wide off of the west ends of lots 7, 8 and 9, being 140 feet long, in block 5 in the town of Jena, La Salle parish, La., as per plat of said town on file in the recorder's office of La Salle parish, La., together with all buildings and improvements situated thereon, or thereunto belonging.

On April 26, 1924, Shapiro sold this property to C. H. Cary, and on April 12, 1926, Cary sold an undivided half interest in it to John M. Edwards. Up to the time of the filing of this suit, there had been no further sales or transfers. On November 1, 1927, Shapiro went into voluntary bankruptcy by filing a petition for the purpose in the United States District Court for the Western District of Louisiana, and was adjudged a bankrupt in the early part of 1928. No discharge appears to have been asked for or granted, though all the property owned by him was surrendered and sold, and the proceeds distributed among his creditors by the bankrupt court. Plaintiff filed this claim in these proceedings and received $94.43 on March 22, 1929, after the filing of this suit. This suit was filed by the plaintiff against the defendants in an effort to collect its judgment against Shapiro out of property which he owned at the time the judgment was secured, but which is now owned by the defendants. The suit is brought in the form of a hypothecary action, and all the required preliminary demands and notices are admitted to have been made and given in accordance with law. An exception of prematurity was filed by the defendant Cary, and same was overruled by the court. This exception was based on the allegation that Shapiro had been adjudged a bankrupt; that the plaintiff had filed and proved its claim in the bankruptcy proceedings; that it would participate in the proceeds of the sale of its property; and that until the disbursement of the said proceeds it would be impossible to determine the amount of the liability that might exist by virtue of defendants' ownership and possession of the property in question. He then answered and contended that the bankruptcy proceedings operated as a cancellation of all judgments listed as liabilities by the said Shapiro and that, therefore, all legal mortgages created and existing against any property by virtue of the recordation of any judgments were likewise canceled. He particularly alleged that the plaintiff was estopped from pursuing the said property by the hypothecary action for the reason that it had filed its claim against Shapiro in the bankruptcy proceedings, and sought to participate in the bankrupt's estate. The defendant Edwards, in his answer, alleged that in the suit in which plaintiff obtained its judgment against Shapiro there was no legal citation and that, therefore, the judgment was null and void. He further contended that the suit was premature, in that bankruptcy proceedings were pending in the United States District Court. In addition, he attempts to have other property formerly owned by Shapiro subjected to the payment of this judgment under a plea of discussion, but complied with none of the requirements of the law relative to such a proceeding. He also called his co-defendant Cary in warranty. On March 22, 1929, after the suit was filed but before trial, plaintiff received the sum of $94.43 as a dividend from the bankrupt's estate, which was applied as a

credit on the debt sued on herein. On trial in the lower court, there was judgment in favor of the plaintiff against the defendants as prayed for, ordering them to surrender the property described in plaintiff's petition, in order that it might be sold to satisfy plaintiff's hypothecary debt less the amount recovered from the bankrupt court, and, in default of their surrendering the said property as directed, the defendants were condemned to pay the amount of the said judgment. There was further judgment in favor of the defendant Edwards against the defendant Cary on his call in warranty in a sum equal to the purchase price paid by the said Edwards to the said Cary for an undivided one-half interest in the property, in the event that the said Edwards should be dispossessed of his interest, or should relinquish the same in accordance with the decree of the court. From that judgment, both defendants have appealed.

OPINION

The plea of prematurity urged by both defendants was properly overruled by the trial judge, for the reason that one holding security for a debt due by a bankrupt in the enforcement of his rights against the security is not required to await the distribution of the proceeds of the bankrupt's property out of which the ordinary creditors are to be paid. If he chooses to do so, he may stay out of the bankruptcy proceedings entirely, and look to the security alone for the payment of his debt. In fact, in all cases where a creditor of a bankrupt is secured by a mortgage or other lien on property belonging to the bankrupt's estate, he must look first to the security for the payment of his claim before being permitted to participate with the unsecured creditors in the proceeds of the mass of the bankrupt's estate. Such a claim is "allowable" to share in dividends only to the extent of any deficit left after deduction of the value of the security from the debt. Remington on Bankruptcy, secs. 241 and 911; Bankruptcy Act, sec. 57e and sec. 57h, 11 USCA sec. 93 (e) and (h). On the other hand, if the creditor prefers, he may file his claim as an unsecured claim and renounce his security entirely. But if he prefers to look to his security alone and renounces any right to participate in the proceeds of the mass of the bankrupt's estate, he may, with the consent of the bankrupt court, proceed at once in the state court to collect his debt out of the security. So that, not only is the suit to collect a debt due by a bankrupt out of property securing its payment not subject to an exception of prematurity, but the suit should be brought before the said secured creditor is allowed to share in the proceeds of the mass of the bankrupt's estate. This is necessary in order to determine the balance due the secured creditor, if any, after the security has been applied towards the payment of the debt. The only thing that the plaintiff in this case did wrong, if any, was in filing and proving his claim as unsecured, before exercising his rights on the security, or ascertaining its value in some of the ways provided by the bankrupt act.

But in this case, we do not hold that plaintiff did not have a right to file his claim as he did. In all references to property securing a claim against a bankrupt both by the bankrupt act and the authorities, only property belonging to the bankrupt's estate is included. We have engaged in the above discussion to show that, even in cases where the law designates the order in which a secured creditor should proceed, it directs that he either proceed first against the security, or ascertain its value before being allowed to share in the dividends accruing from the rest

of the property. To sustain the exceptions of prematurity would be to hold directly opposite to what the law provides. But in this case, the security out of which the plaintiff is endeavoring to collect its debt is no longer the property of the original debtor, nor is it a part of the bankrupt's estate. For that reason, the bankrupt court does not govern plaintiff in its efforts to collect its debt out of the said property, nor is said property in any sense a part of the bankrupt's estate. Under the law, plaintiff had a perfect right to participate as an unsecured creditor in the bankruptcy proceedings, without reference to the security held, for the reason that the property held as security is not property of the bankrupt.

Defendant Edwards included in his answer what might be termed a plea of discussion, but this need not be examined on its merits, as he did not in any manner comply with the law on this subject, Code of Practice, art. 72, which required that specific property be designated for discussion, and that the necessary funds be provided.

Defendant Cary, in his answer, pleads estoppel based on the allegation that since Shapiro has gone into bankruptcy, and plaintiff has filed its claim against him in the bankrupt court, it, plaintiff, is estopped from asserting its right to the hypothecary action against the property owned and possessed by defendants. It must be conceded that plaintiff could have ignored the bankruptcy proceedings entirely, and depended solely upon the claim that it holds upon the property in question. Its effort to collect its debt out of the property of the bankrupt cannot injure the defendants. On the contrary, this action of the plaintiff was in the interest of the defendants. Whatever the plaintiff

realizes out of the bankrupt's estate will reduce the amount of the indebtedness in question, to the payment of which the property involved is subject. In fact, the judgment in the case gives credit for the amount of $94.43, which plaintiff has received from the trustee of the bankrupt. To sustain this plea of estoppel would be equivalent to holding that one suing the principal debtor is estopped from suing those who had guaranteed the debt. It would have the effect of penalizing the plaintiff for doing the thing that would lessen the debt, and thereby benefit the defendants to that extent. This plea is without merit, and was properly overruled.

Defendant Edwards alleges in his answer that the judgment representing plaintiff's claim is null and void for want of legal citation upon Shapiro, the judgment debtor. The only proof offered to substantiate this alleged defense was the fact that the defendant's attorney was unable to find the original citation in the clerk's office. Shapiro was not called as a witness to testify on this point. The evidence is insufficient to support the allegation.

Aside from the exceptions enumerated above and which were all overruled, the principal defense in the case is that the claim of plaintiff against Shapiro, represented by its judgment as recorded in the mortgage records, is not an obligation of the defendants; that they are neither guarantors nor sureties on the said obligation, and that the adjudication of Shapiro as a bankrupt had the effect of cancelling this judgment as well as all other judgments against him and that, therefore, the plaintiff has no right to the hypothecary action against them, as the owners and possessors of the property involved. The answer to these defenses

is: It is not contended that the judgment against Shapiro is a personal obligation of the defendants. It is not. It is not contended that the defendants are guarantors or sureties on the obligation. They are not. But it would be a new and startling declaration of the law to say that an adjudication and discharge in bankruptcy releases the security which a creditor may hold, whether this security be in the form of personal indorsements, or mortgages on real or personal property. In their brief, counsel for the defendants take the position that the adjudication and the discharge in bankruptcy cancel and satisfy all obligations of the bankrupt, and that it necessarily follows that all mortgages and judgments against the bankrupt would be canceled. The fallacy of the argument is found in the misconception of the effect of the discharge in bankruptcy. With reference to this judgment, the only effect of a discharge in bankruptcy would be to relieve Shapiro from all personal liability on account of it. At the time of the recordation of the judgment in the mortgage records of La Salle parish, plaintiff had a personal claim against Shapiro, and against any and all his property, and could have executed the judgment by direct seizure under a writ of fieri facias. When Shapiro sold the property involved in this suit, it was sold subject to plaintiff's right to seizure, but it could be seized only by the hypothecary action. Plaintiff was just as effectually secured by this judicial mortgage on this property after its sale as it was before. The only difference lies in the remedy to enforce its right on the security. When Shapiro was adjudged a bankrupt and received his discharge, he was no longer liable personally for the payment of the judgment, but that fact does not deprive the plaintiff of its right to pursue this property on which it

is conceded he had a judicial mortgage down to the moment of the discharge. Suppose this judgment had been based on a note with personal indorsements for security. Could it be contended for a moment that the release of a principal through bankruptcy would deprive plaintiff of its right to pursue the property of the indorsers? The law in such cases has been ably set forth in this state in two well-considered opinions: Schexnailder v. Fontenot et al., 147 La. 467, 85 So. 207, and Allen v. Boyett et al., 2 La. App. 643. The first case involves the right of a judgment creditor to enforce his judgment against property of a discharged bankrupt, which had been released to him as a homestead by the bankrupt court. The court held that the discharged bankrupt was relieved from all personal liability on account of the judgment, but that the judicial mortgage was as effective and as much in force after the discharge as it was before. In that case, the judgment creditor took steps to enforce his rights under his judicial mortgage, while the discharged bankrupt still owned and possessed the property. Under defendant's contention, if this judgment creditor had participated in the bankruptcy proceedings, the judgment would have been satisfied. Such a position is clearly untenable. If the judgment creditor had sat quietly by and let the bankrupt sell the property, it would have passed to the vendee subject to the judicial mortgage, and the hypothecary action would have been necessary instead of a direct action under a writ of fieri facias. The case of Allen v. Boyett involves the enforcement of a lessor's lien under similar circumstances, but the reasoning of the case and the principal involved are the same.

Counsel for defendants say that it will be necessary for us to make jurisprudence

in deciding this case, for the reason that in their opinion there is none in Louisiana on the subject. But the case of Schexnailder v. Fontenot effectively answers every question or argument that has been raised in this case. Up to the time that Shapiro went into bankruptcy, plaintiff herein had a judicial mortgage on the property involved herein. If it had collected $94.43 from the bankrupt court, it cannot be said that its judicial mortgage and its right to the hypothecary action were affected in the least. Receiving this amount as a credit on the indebtedness operated to the benefit of defendants, and they cannot claim the forfeiture of the right to the hypothecary action by the plaintiff.

Counsel appear to base their case upon equity, justice, and right. All the equities are with the plaintiff, as well as the law. What right did these defendants have to acquire this property free of this judgment to which it was subject? Plaintiff secured its judgment strictly in accordance with law and recorded it, and thus acquired a judicial mortgage. From that moment plaintiff had its mortgage rights against the property, which the law declares follows it in the hands of all future purchasers. What moral or equitable right did the defendants have to purchase the property free of this mortgage, and thus defeat plaintiff's security granted to it by the law? The release of Shapiro from all liability left plaintiff with the security alone. The principal reason for securing judgments, and having them recorded as judicial mortgages on property, is to secure judgment creditors in the event that the judgment debtor may in the future take advantage of the bankruptcy act.

For the reasons assigned, the judgment appealed from is affirmed; the defendants to pay the costs of both courts.