SAVOY, Judge.
Plaintiff, Louis M. Ulmann, Jr., brought this action praying for a declaratory judgment wherein he sought to be decreed the owner of and entitled to the possession of two life insurance policies held by the defendant bank under two instruments entitled “Assignment of Life Insurance Policy as Collateral”, and he further wishes to have determined the rights, status and legal relationships existing between himself and the defendant. An exception of non-joinder of an indispensable party was filed by the defendant in the trial court on the grounds that plaintiff’s three minor daughters who are the named beneficiaries under the two insurance policies should be joined in the litigation. The trial court overruled this exception, and the defendant did not appeal from the ruling. After the bank filed an answer, both parties stipulated that the case would be tried on the undisputed facts as set forth in the petition, answer and exhibits.
During the year 1966, plaintiff obtained three loans from the defendant, signing three promissory notes totalling $11,200.00 to evidence the indebtedness. Plaintiff had previously transferred to the defendant two life insurance policies issued by the Occidental Life Insurance Company of California, which transfer was styled “Assignment of Life Insurance Policy as Collateral.” The assignments of the two policies were executed on September 12, 1960, and on March 11, 1961, and were given to secure any indebtedness up to the amount of $200,000.00 either existing then or that may thereafter arise in the ordinary course of business. On October 19, 1966, a bankruptcy petition was filed by the plaintiff in the U. S. District Court, Western District of Louisiana, resulting in plaintiff’s discharge in bankruptcy on December 28, 1966. Prior to the discharge, defendant had filed its proof of claim and the Trustee In bankruptcy disclaimed the policies in question after finding them to possess no cash value. Subsequent to the discharge in bankruptcy, plaintiff demanded that the two insurance policies be released by the defendant and returned to him. When the defendant refused to comply with plaintiff’s request, the present action for a declaratory judgment was instituted by plaintiff.
After the matter had been submitted to the district court for adjudication, it rejected plaintiff’s demand and dismissed' his suit.
In the written opinion of the district court, it held:
(1) Plaintiff to be the owner of the two policies described in his petition, copies of which were filed in evidence;
(2) Defendant to be entitled to retain the insurance policies as a valid pledge and collateral security of plaintiff’s indebtedness now existing including interest until paid, together with the amount of premiums paid or to be paid by the defendant to keep the policies in force;
(3) The indebtedness of plaintiff discharged in bankruptcy to be affected by and to be subject to a lien and privilege on the proceeds of the insurance policies by virtue of the pledge as collateral security of the insurance policies; declaring defendant bank to have the sole right to collect *354 from the insurer the proceeds of the policy when it becomes a claim by death or maturity, and that out of said proceeds all indebtedness due and owing at that time by plaintiff to defendant be deducted from the proceeds and the balance paid to the beneficiaries under the policy, if the plaintiff is deceased or to the plaintiff if the proceeds are payable before his death;
(4) The instruments labeled “Assignment of Life Insurance Policy as Collateral”, as to each of the policies involved herein, to be in full force and effect and entitled to recognition thereof in every particular;
(5) That the defendant bank has the prime right to the proceeds of each policy as set forth in the instrument labeled “Assignment of Life Insurance Policy as Collateral” ;
(6) That the relationship of the plaintiff-debtor and the defendant-creditor has not been changed by the bankruptcy proceedings in any way, save the limit on the personal liability of the plaintiff.
From the district court judgment plaintiff has appealed.
On appeal, plaintiff contends that the trial court erred (1) in concluding that the pledge by the appellant of the insurance policies operated as a pledge of the proceeds of the insurance policies, and (2) in concluding that an unenforcible or natural obligation will support an obligation of pledge. The defendant argues that the judgment appealed is correct and should be affirmed.
In substance, plaintiff’s theory is that the assignment of the life insurance policies constituted a pledge, and that since plaintiff received a discharge in bankruptcy, this, in effect, extinguished' the principal obligation of the promissory notes executed in favor of the defendant; that as the principal obligation had fallen, the accessory obligation of pledge thus also had to fall, citing LSA-C.C. Articles 3136 et seq. With this theory we are constrained to disagree.
The assignments of the two policies were acknowledged by the insurance company, and the contract between the plaintiff and the insurance company provides that a sum of money will be paid to designated beneficiaries subject to the rights of any as-signee, and further that any balance of sums received hereunder from the insurer remaining after payment of the then existing liabilities matured or unmatured shall be paid by the assignee to the persons entitled thereto under the terms of the policy had the assignment not been executed. Thus, it is readily seen that plaintiff had the right to so limit the beneficiaries’ interest by executing the assignment.
Vance, On Insurance, at page 764, was quoted by the trial court as relating to the assignment of life insurance policies to secure debts.
“Perhaps the greater number of assignments of life policies are made by persons who transfer existing valid policies by way of pledge to assignees for the purpose of securing debts already existing or advances to be made, often in the form of premium payments. Such assignments are often absolute in form, but if they are intended to serve only as collateral securities that fact may be freely shown. When made in good faith, they are wholly unobjectionable. Applying to assignments of this kind the general doctrine applicable to all pledges, we easily derive the rule that the as-signee’s rights in the proceeds of the policy are limited to an amount equal to the debt secured, the premiums paid, and the interest thereon. As between the insurer and the assignee the latter is entitled to the whole proceeds; but he holds the excess beyond his interests; as above described, in trust for the beneficiary or personal representative of the deceased debtor. From this doctrine there is no dissent. The same rule applies even when the assignment is made immediately upon issue of the policy, pursuant to an agreement previously made in good faith for the purpose of securing to the as- *355 signee money owed or to be advanced. The fact that the collection of the debt is barred by the statute of limitation or by discharge in bankruptcy does not prevent the creditor from collecting and retaining the proceeds of a policy assigned to him.”
To the same effect, see Appleman, Insurance Law and Practice, Volume 2A, Section 1317, at page 548, wherein the author states:
“It has been held that the dissolution of a corporation to which assignments were made do not destroy such assignee’s interest. Nor does an adjudication of bankruptcy have that effect. * *
We feel that the trial court has correctly analyzed and applied the law in this particular case, and we quote in part from its opinion:
“Another contention made by the plaintiff is that the discharge in bankruptcy caused the principal obligation to fall resulting in extinguishment of the pledge. The court is not of the same view as plaintiff as to the legal effect of plaintiff’s discharge in bankruptcy.
“A discharge in bankruptcy releases a bankrupt from all of his provable debts. See 11 U.S.C.A. Section 35. The discharge bars enforcement of a personal judgment against a bankrupt and the adjudication in bankruptcy is an affirmative defense to a law suit on a discharged obligation. See Louisiana Machinery Company v. Passman [La.App.], 158 So.2d 419 (3 C.C.A.1964); 3B C.J.S. ‘Bankruptcy’, Section 563 at page 38; Collier, Bankruptcy Manual, 2d Ed., Section 17.11, et seq. The discharge has the effect of releasing the bankrupt from personal liability but it does not destroy the liens, mortgages or other encumbrances, affecting the debt- or’s property. The liability which remains is in rem. See Chalkley v. Pellerin, [La.App.], 186 So. 382; Alphonse Brenner Company, Inc. v. Owens, [17 La.App. 294] 136 So. 122; Huff v. Justice, [La.App.] 174 So.2d 164; Schexnailder v. Fontenot, et al., 147 La. 467, 85 So. 207; In Re Burden, 83 F.Supp. 416 at page 427 (headnote * * *_»
Citing Mercer National Bank of Harrodsburg v. White’s Ex’r., 236 Ky. 128, 32 S.W.2d 734, the district court said:
“In Mercer the bankrupt had pledged life insurance policies having no cash surrender value to the bank to secure certain loans. The bankrupt’s estate attempted to claim, subsequent to adjudication in bankruptcy, that the indebtedness had been discharged in bankruptcy and therefore the securities should fall to the benefit of the named beneficiaries. In denying the claim of the bankrupt’s estate the Kentucky court used reasoning substantially as follows: Valid liens on policies of insurance without cash surrender value are not affected in any manner by bankruptcy proceedings. If the policies have a cash surrender value although subject to a lien for an amount less than the asset value, they must be administered in the bankruptcy proceedings; but when there is no cash surrender value, or it is less than the lien against the policy, the bankruptcy court does not take jurisdiction. Policies of insurance without cash value and those pledged to the full extent of the insured’s equity, are treated precisely as exempt properties are treated, and the bankrupt is left free to deal with it as he may desire. A trustee in bankruptcy has no interest in a policy of life insurance payable upon death of the insured to his personal representatives, when the insured has previously pledged the policy for a sum equal to or greater than the stipulated surrender value. A lien upon an insurance policy in existence from the time of the pledge is preserved by the express terms of the bankruptcy act. The attaching of the lien does not depend upon any future act, and its continuance is dependent only upon the payment of the premium, which conditions the pledgee may perform. * *
The case of Yeatman and Moore v. New Orleans Savings Institution, 95 U.S. 764, 24 L.Ed. 589, cited in the district court opinion, involved the question of whether *356 the Savings Institution could be held to have converted certain certificates given to it as a pledge by the bankrupt. The court, at page 590, said:
“ * * * The Savings Institution, by virtue of the pledge, acquired a special property in the certificates of indebtedness. It was entitled to retain possession until the objects for which they were pledged had been fully accomplished. Until the note for $5,000 was fully paid, they were not bound to return the certificates either to the bankrupt or to the receiver, or assignee in bankruptcy. Such are, beyond doubt, the rights of the pledgee at common law. And such are its rights under the Code of Louisiana, which declares that ‘The creditor who is in possession of the pledge can only be compelled to return it when he has received the whole payment of the principal as well as the interest and costs.’ (Rev.Code La., sec. 3164).
“These rights of the pledgee were not impaired or affected by any of the provisions of the Bankrupt Lav. The established rule is, that, except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens or in-cumbrances, whether created by operation of law or by act of the bankrupt, which existed against the property in the hands of the bankrupt * * *. He takes the property in the same ‘plight and condition’ that the bankrupt held it. * * (Citations omitted.)
For the reasons assigned, the judgment of the district court is hereby affirmed at appellant’s costs.
Affirmed.